BEERY, Appellant, vs. THE CHICAGO & NORTHWESTERN RAIL- WAY COMPANY, Respondent.

*December 5 — December 22, 1888.*

*(1) Appeal: Evidence: Immaterial error. (2, 3) Negligence: Cause of accident: Speed of railroad train: Instructions to jury: Degree of proof. (4) New trial: Newly discovered evidence.*

1. In an action for personal injuries alleged to have been caused by negligence the trial court permitted the defendant to cross-exam- ine the plaintiff as to incumbrances upon his property, the object being to show that he was pecuniarily embarrassed and was simu- lating or aggravating the character and extent of his injuries. The jury having found that there was no actionable negligence, it is *held* that the above ruling, even if erroneous, could not have preju- diced the plaintiff.

2. An accident to a railroad train was caused by the breaking of the side-rods of the engine. The speed at which the train was run- ning was not unlawful or unusual, and it was not shown that it would tend to contribute to such breakage. *Held,* that it was not error to instruct the jury that the speed of the train had no connection with the accident and could not be considered on the question of negligence.

3. An instruction that the jury should feel " reasonably certain " as to what they should find to be the cause of an accident, is *held* not erroneous.

4. To support a motion for a new trial on the ground of newly discov- ered evidence that the breaking of the side-rods on defendant's engine was the result of negligence, the plaintiff filed affidavits of two section men that on the day after the accident they picked up pieces of the strap or iron frame which held the brasses of the side- rod in place, and now have such pieces in their possession. The

plaintiff's own affidavit stated that he had examined such pieces since the trial, and that one of them plainly showed that it had been cracked for some time before the final break. Plaintiff's description of this piece was adopted in the affidavits of the section men, but in none of the affidavits was there any attempt to describe the appearance of the piece when it was picked up, but only its appearance after it had been lying about exposed to the air and dirt for several months. *Held*, that it was not error to refuse to grant the new trial, the appearance of the piece after such exposure not warranting any inference that there was an old crack therein at the time of the accident.

APPEAL from the Circuit Court for *Sauk* County.

Action to recover damages for personal injuries, alleged to have been caused by defendant's negligence. The facts will sufficiently appear from the opinion. The jury found a special verdict to the effect that the defendant was not guilty of any negligence with respect to the condition of the engine in question. A motion for a new trial was denied, and from the judgment entered on the verdict in favor of the defendant the plaintiff appeals.

*G. Stevens*, for the appellant.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

COLE, C. J. This is an action to recover damages for injuries sustained by the plaintiff while a passenger upon a freight train on the defendant's road. While riding on the freight train between Reedsburg and La Valle the plaintiff, who was in the caboose, discovered that the engine was pounding and tearing up the track, and saw that the cars were jumping and moving in an unusual manner, saw the conductor, who was at the time on top of the train, get down and jump off, and, judging from appearances that there would be a general wreck of the train, deemed it safe to jump from the train, and avoid being caught in the crash, and thereby sustained the injury of which he com-

plains. It appeared that the side-rods of the engine broke, and aside from the fact that the accident happened, and the presumption of negligence arising. therefrom, the only evidence of negligence on the part of the defendant attempted to be shown was that the breaking of the side-rods was caused by some defect in the pins ,or fastenings where the connection with the driving-wheels was made, or that these parts were not kept properly oiled.

During the cross-examination of the plaintiff as a witness, after he had testified as to the circumstances of the accident, his injury, etc., and that he was the owner of a flouring-mill, he was asked by the defendant's counsel what amount of mechanics' liens were on the mill in August, 1887. This was objected to, but the court overruled the objection, and the witness answered. The first error assigned is this ruling of the court. It is said that the question had no bearing whatever upon the issue of negligence, which was the issue in the case. This is true. The object of the question doubtless was to show that the plaintiff was pecuniarily embarrassed, and was simulating or aggravating the character and extent of his injuries. But this ruling could not have prejudiced the plaintiff in any way, even if erroneous, because the jury found that no actionable negligence was proven. The question of damages was not, therefore, reached.

Two exceptions taken to the charge of the court are relied on as error here. The court charged that the speed of the train was not unlawful, and had no connection with the accident, and could not be considered on the question of negligence. It clearly appeared that the speed of the train was not unusual, and we fail to perceive how it could have contributed to the breaking of the fastenings of the side-rods of the engine. It is said such speed would or might have much to do with the heating of the brasses which constitute a part of the side-rods, if these brasses were not

kept properly oiled, because it would greatly increase the friction of those parts. It was not shown what really caused the breakage of the side-rods, or that the rate at which the train was moving would tend to contribute to such breakage. The cause of the breakage of the side-rods rests in conjecture. The evidence does not explain it, or connect it with the speed of the train. It is quite as reasonable to assume that it was pure accident, against which no degree of care or vigilance could guard, as to attribute it to any other cause. It is more probable the proximate cause of the breaking was a sudden strain upon or cramping of these parts while the train was moving. It is a matter of common knowledge that at best the heavy and complicated machinery used upon railroads is liable to break by inequalities in the track, or a sudden strain, or from some other cause, where the greatest care and skill have been exercised in its construction and use. The learned circuit court left it to the jury to determine whether the breakage was an accident for which nobody could account and no one was responsible, or whether it was produced by the negligence of the engineer in not taking due care of the engine. But upon the evidence there was no ground for predicating negligence on the speed of the train.

·The other exception is based upon the language of the court that the jury must feel *reasonably certain*, not only that the engine or the part in question had not been properly oiled and cared for, but they should feel *reasonably certain* that it affected the pins that broke so as to cause the dropping of the bars in question. The court added that in civil cases the jury did not arrive at conclusions beyond a reasonable doubt, but they should feel reasonably certain that what they find is true. It is said that this charge required the plaintiff to make out his case by something more than the mere preponderance of proof, and nearly approached the rule for the reformation of a written

instrument, where the proof is required to be clear and most satisfactory. We do not think this is the meaning of the charge. The jury were merely told that they must be satisfied that their finding was in accord with the weight of testimony; in other words, that the preponderance of the evidence must convince their judgments of the truth of the fact found. This is all the charge means, not that the evidence to establish a fact must be clear and most satisfactory. We do not think there was anything misleading in the charge upon this point.

The only other error to be noticed is the refusal of the court to grant a new trial on the ground of newly discovered evidence. The material part of the newly discovered evidence is contained in the affidavit of the plaintiff, who states that, after the trial, he learned from Courtier and Webster, section men of the defendant, that "each picked up a piece of the strap or iron frame which surrounds the brasses and holds them in place, and which is bolted to the side-rod, and then had them in their possession; that the piece so picked up by and in the possession of Webster, which the plaintiff had seen and carefully examined, is broken off squarely at the edge of the square hole made to receive the key by which the brasses were tightened up and held firmly in place, both pieces being broken in the same place; that the piece of said strap or frame so picked up by and in the possession of the said Webster plainly shows that the iron on one side of said square hole had been cracked about half way off, and the other side also cracked, but not quite so much, for some time before the final break. It also shows plainly that the brasses had been loose, so as to play back and forth, for a long time." The plaintiff, of course, is speaking of the appearance of these pieces of iron at the time he examined them. The affidavits of both Courtier and Webster were used in support of the motion, in which each states that the next day

after the accident he was present where it occurred, and then "picked up a piece of the strap or iron frame which holds the brasses of the side-rod of the locomotive in place, and took the same away and retained it in his possession, intending to have it made into an iron wedge; that said piece, with its cracks, marks of wear, and other defects, is correctly described in the affidavit of the" plaintiff, the language of which said affidavit, so far as relates to a description of said piece of said iron strap or frame and its said imperfections and defects, is hereby adopted and made part of each affidavit.

Now it will be noticed that neither of these persons attempts to describe, or does describe, the appearance of the broken piece at the time it was picked up, when it was possible to see whether there was an old crack in the piece or not. The plaintiff did not see the pieces until several months after the accident, when it was impossible to tell from existing marks whether there was an old crack in them when broken or not. These pieces had been lying about exposed to the air and dirt, and would naturally present the same appearance where broken. This is common experience. No safe or proper inference could be drawn from such appearance at that time as to the existence of an old crack in them. Courtier and Webster say they adopt the language of the plaintiff so far as relates to the piece of strap, but refrain from describing the appearance of the piece when found and when an old crack could have been seen if it existed. As bearing upon the question of negligence it would be material and important could it be shown that such a crack in the iron fastening existed at the time of the accident. There would then be ground for holding that the agents of the company should have discovered the defect in the machinery, and repaired it. But to prove the appearance of these pieces of iron and of the marks upon them after the lapse of some months, when the pieces had

been exposed, would not warrant any inference that there was an old crack to be seen in them at the time of the accident. So really the newly discovered evidence does not tend to prove any fact material to the issue of negligence. It is too vague and uncertain to base any conclusion upon. We therefore think that the circuit court did not err in refusing to grant a new trial on the ground of newly discovered evidence.

*By the Court.*— The judgment of the circuit court is affirmed.