AUGUST ECKERT v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 12, 1908.

Nos. 15,668—(68).

**Injury to Freight Handler.**

> When a railroad company places a loaded car on a side track for the purpose of being unloaded, it is negligence for it to switch cars onto the track and against the loaded car, without a warning to persons who are engaged in unloading freight therefrom.

Action in the district court for Ramsey county by plaintiff, a minor, to recover $10,000 for personal injuries. The case was tried before Hallam, J., and a jury which returned a verdict in favor of plaintiff for $2,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*M. L. Countryman,* for appellant.

*Godfrey, Molander & Giantvalley,* for respondent.

ELLIOTT, J.

In an action to recover damages for personal injuries alleged to have been caused by the negligence of the railway company, plaintiff recovered a verdict for $2,000. The appeal is from an order denying

[1] Reported in 116 N. W. 1024.

the defendant's motion for judgment notwithstanding the verdict or for a new trial.

There is no serious controversy about the facts. August Eckert was engaged by the Lamb Lumber Company in unloading lumber from a freight car which was standing upon the appellant's delivery track in St. Paul. While Eckert was at work inside the car, a switching crew switched in cars onto the track on which stood the car in which Eckert was working with such force as to throw it from the track and cause the lumber to slide against his leg. The negligence charged is the omission of the railway company to notify Eckert that the cars were going to be switched in onto the track and against the car in which he was working. There is no reason for disturbing the verdict in this case. The ordinary way of transferring the cars to the delivery track was to allow them to be carried down the track by gravity, in charge of a switchman acting as a brakeman, whose duty it was to set the hand brakes and bring the cars to a stop at the proper point on the delivery track. In this instance, after the cars had started, the brakeman proceeded to set the brakes in the ordinary way. In doing this he placed a short club between the spokes of the brakewheel, and thus secured a leverage which enabled him to set the brake tighter than he otherwise could have done. After thus tightening the brake he attempted to secure it by kicking a dog into a notch in a ratchet wheel which was designed for the purpose. He failed to secure the dog safely in the ratchet, and it slipped out. The wheel, thus released, revolved rapidly and jerked the club out of his hand. Being thus left without means of properly controlling the cars, the speed increased beyond that contemplated, and they were thrown violently against the car in which Eckert was working.

Under the circumstances the question of the negligence of the railway company was clearly for the jury. Foss v. Chicago, M. & St. P. Ry. Co., 33 Minn. 392, 23 N. W. 553; Jacobson v. St. Paul & D. R. Co., 41 Minn. 206, 42 N. W. 932. As said in Chicago v. Goebel, 119 Ill. 524, 10 N. E. 372: "When a railroad company puts loaded cars upon a side track, for the purpose of being unloaded by the owners of the freight, and such owners, their agents or servants, with the express or implied consent of the company, proceed to remove the

freight, the company in such case, has no right, without special notice and warning, to run or back a train in upon the side track while the cars are being unloaded. And while in such case those engaged in the work of unloading are not permitted to close their eyes or ears to what comes within the range of these senses, yet they may give their undivided attention to their work, and are justified in assuming that the company will not molest them, or render their position hazardous, without such notice or warning. That such is the law is well settled by authority." To the same effect, see Gessley v. Missouri, 32 Mo. App. 413; International v. Hall (Tex. Civ. App.) 25 S. W. 52.

2. In the course of the examination of Dr. Lewis, the defendant offered in evidence a report which the witness had previously made to the claim agent of the company, and the exclusion of this instrument is assigned as error. It is not claimed that the report could have been properly received as original evidence. On the cross-examination of the witness the plaintiff's counsel asked him if he had not reported to the claim agent that the plaintiff's leg had been shortened as a result of the injury. The witness had testified that there was no shortening of the leg, and in reply to this question on cross-examination stated that he had not made a report in which he stated that it had been shortened. No further reference was made to the matter until the defendant offered the report in evidence for the purpose of showing, as stated, "that it did not contain the statement which plaintiff's counsel had unjustifiably assumed and insinuated before the jury that it did contain." The trial court said: "I think you may introduce so much as relates to the shortening of the leg. Mr. Countryman: Well, there isn't a word that there is any shortening of the leg; but there is a full report as to the nature of the injury and the prognosis. (Objection sustained.)" What the report does contain is this: "Will any permanent injury or deformity result? If so, what? No." Upon this condition of the record we find no prejudicial error.

The only other question raised and discussed in the briefs is as to the amount of damages. There was evidence tending to show that the plaintiff's left leg was broken and his ankle dislocated. His leg was in a cast for six weeks. For eight weeks he walked on two crutches, and for some time thereafter he used one crutch and a

cane. Four months after the accident he could not bear his full weight on his left leg, and he still suffers much pain. One of the doctors testified that as a result of the fracture the leg was about three-quarters of an inch shorter than the other, and that it would probably be four or five months after the trial before the ankle joint would be fully restored. Plaintiff was otherwise badly bruised and painfully injured. He was twenty years old, and at the time of the accident was earning $1.75 a day. In view of this evidence, and the approval of the verdict by the trial court, we cannot say that it was so excessive as to show that it was the result of passion or prejudice.

Order affirmed.