HENDRICKSON, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*September 15—October 5, 1909.*
*April 29—May 24, 1910.*

*Master and servant: Railroads: Who are servants: Injury to person working on car in service of another: Volunteers: Negligence: Contributory negligence: Evidence: Instructions to jury: Appeal: Harmless errors.*

1. Where a person who was assisting the conductor of a railway train to repair a brake on a car, but who had not been employed by the conductor under any express authority or because of any sudden emergency necessitating his employment, was injured by negligence of the engineer, the railway company cannot be held liable on the theory that the injured person was its servant.

2. A foreman employed by a granite company at its quarry, whose duty included attending to the reception and placing on a spur track of the cars which were to be loaded at the quarry, and who, while performing such duty in connection with a switching crew of the railway company, undertook with the conductor's consent to assist in repairing the brake on one of the cars which they were attempting to put in place, was not a

trespasser, intermeddler, or mere volunteer with respect to such work of repair, but was engaged in forwarding the interest and business of his employer in that part of the business in which such employer and the railway company had a common interest; and for an injury sustained by him while so engaged, caused by negligence of the servants of the railway company, the latter is liable.

3. Findings by the jury in such case to the effect that the servants of the railway company were negligent in backing the engine without signal or warning against the empty cars, on one of which the plaintiff was helping to repair the brake, and that plaintiff was not guilty of contributory negligence, are *held* to be sustained by the evidence.

4. It being undisputed that the engine struck the cars, that the conductor had given no signal for its backing, and that he did not expect it to do so while he and plaintiff were attempting to repair the brake, no prejudice resulted to defendant from the admission of testimony that the conductor stated, after the accident, that "he did not think himself that the engine was going to hit the car," even though such statement was not properly admissible as part of the *res gestæ.*

5. A refusal to give a correct requested instruction, as to a question in the special verdict, that unless the jury were satisfied from a preponderance of the evidence that it should be answered "Yes" they should answer it "No," was not prejudicial error, where the jury were instructed that their answers to all the questions should be in accordance with what they believed to be the fair weight of the whole evidence, and, as to the particular question, that if they so affirmatively believed from the whole evidence they should answer the question accordingly, and if they were not so satisfied they should give the opposite answer.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action for damages for personal injuries alleged to be due to the negligence of the servants of the defendant railway company. Plaintiff was the foreman of the quarry crew of the Wisconsin Granite Company at Waupaca. As such foreman he had charge of the loading of railroad cars with the crushed granite from the quarry. The crusher of the granite company is about eighteen feet below the level of

the main line of track of the defendant.    The bins contain-
ing the crushed granite are over a spur track, are directly
connected with the crusher, and are supported by heavy stone
walls.    The supporting walls are about fifty-five feet long,
and with the bins made a tunnel through which the cars to
be loaded with the crushed granite may pass, but which is too
low to allow a locomotive to pass through.    The crusher is
located about 900 feet west of the switch connecting the spur
track with the main track.    The spur track, which is used
exclusively for loading the products of the granite company,
extends west of the crusher some 300 or 400 feet.    For a
short distance west of the tunnel, through the tunnel, and
for four or five car lengths east of the tunnel the spur track
is practically level.    East of this level track to the spur
track switch is an up grade of eighteen feet.    West of the
level track there is a slight up grade for a short distance, be-
yond which the track is nearly level.    It was customary for
the train crew of the defendant to take loaded cars from the
level track in and to the east of the tunnel and to place
empty cars upon the slightly elevated track to the west of
the crusher.    Either a sufficient number of cars to reach
from the track on the higher level west of the tunnel to the
east of the tunnel were placed between the empty cars and
the locomotive, and the empty cars were thus pushed back by
the locomotive to the place desired, or the empty cars were
dropped down the grade from the elevation on the east of
the spur track, and carried by the momentum acquired in
the eighteen-foot descent along the level track and up the
slight rise onto the track west of the tunnel.    When the
empty cars had been gotten upon the elevated track west of
the tunnel by either process, the trainmen on the cars would
set the brakes and anchor the cars upon the elevated ground.
A short distance to the west of the crusher building a road-
way crossed the spur track.    The employees of the granite
company were liable to be upon this roadway, or near or

upon the spur track, at all times of the day in the performance of their duties, and there is evidence that when the cars were first brought onto the switch it was customary for an employee of the railway company to ride upon the most westerly of the cars to give warning to persons near or upon the track, to avoid inflicting injuries upon them, and also to set the brakes to anchor the cars in the desired positions.

As foreman of the quarry crew it was the duty of the plaintiff to see that the cars were properly loaded. Preliminary to loading it was necessary to have the cars so placed on the side track that they could be moved or run into the tunnel into such positions as would be convenient for loading, and it was customary for the plaintiff to be at hand when the empty cars were brought upon the spur track and to see that they were so placed that they could be conveniently handled and located for loading them. When a car was wanted for loading, the quarry crew would loosen the brakes and let the car drop down from the elevated track west of the tunnel onto the level track under the bins. When filled the car would be moved onto the level track east of the tunnel.

On June 11, 1906, the loaded cars had been taken from the spur track and four or five empty cars had been dropped down the grade in the spur track. The conductor was upon the most westerly of the cars, and there is some evidence that a brakeman was on the most easterly of the string of empties. After the cars had passed through the tunnel and ascended the grade to the west the conductor attempted to anchor them there by setting the brake on the car. The brake did not operate and the cars started to return along the grade toward the east. There is evidence that the conductor got off on the south side of the car and attempted to block the wheels. There is evidence that when the cars were being brought in on the spur track the plaintiff came toward the spur track from the north, and when he observed that the brake did not work he also tried to block the wheels. Neither attempt was

successful and the cars passed on into the tunnel.  The conductor and the plaintiff met and passed some remarks and both went into the tunnel.

Evidence was introduced to the effect that it was customary for the engineer on the switching locomotive to wait for a signal from the man on the most westerly car before he moved the locomotive for the purpose of respotting the cars, when this was necessary.  On the occasion in question the conductor gave no signal.  While he was upon the car and had his hands upon the brake, and while the plaintiff was in the act of helping to repair the brake, the locomotive was brought into violent collision with the other end of the string of empty cars, and as a result the plaintiff was thrown down and terribly injured and maimed.  This is an appeal from a judgment in plaintiff's favor.

*Walter D. Corrigan,* for the appellant, contended, *inter alia,* that ordinarily trainmen have no authority to employ servants for the company.  3 Elliott, Railroads, § 1305; *Central T. Co. v. T. & St. L. R. Co.* 32 Fed. 448; *Sloan v. Central I. R. Co.* 62 Iowa, 728, 16 N. W. 331; *Ga. Pac. R. Co. v. Propst,* 83 Ala. 518, 3 South. 764; *Fox v. C., St. P. & K. C. R. Co.* 86 Iowa, 368, 53 N. W. 259, 17 L. R. A. 289; *Bradley v. N. Y. C. R. Co.* 62 N. Y. 99; *Vassor v. Railroad,* 142 N. C. 68, 54 S. E. 849; *Cooper v. L. E. & W. R. Co.* 136 Ind. 366, 36 N. E. 272; *Powers v. B. & M. R. Co.* 153 Mass. 188, 26 N. E. 446; *Eaton v. D., L. & W. R. Co.* 57 N. Y. 382, 15 Am. Rep. 513; *Croft v. C., R. I. & P. R. Co.* 132 Iowa, 687, 108 N. W. 1053; *Atchison, T. & S. F. R. Co. v. Lindley,* 42 Kan. 714, 22 Pac. 703; *Mickelson v. N. E. T. R. Co.* 23 Utah, 420, 64 Pac. 463; *McDaniel v. H. A. & B. R. Co.* 90 Ala. 64, 8 South. 41; *Wagen v. M. & St. L. R. Co.* 80 Minn. 92, 82 N. W. 1107; *Church v. C., M. & St. P. R. Co.* 50 Minn. 218, 52 N. W. 647, 16 L. R. A. 861; *Atlanta & W. P. R. Co. v. West,* 121 Ga. 641, 49 S. E. 711; 3 Cream of Law, § 94; *Taylor v. B. & O. R.*

*Co.* 108 Va. 817, 62 S. E. 798; *Evarts v. St. P., M. & M. R. Co.* 56 Minn. 141, 57 N. W. 459, 22 L. R. A. 663, 664; *Rummell v. Dilworth, P. & Co.* 111 Pa. St. 343, 2 Atl. 355; *Fox v. Sanford,* 67 Am. Dec. 587, 597, note; *Flower v. Pa. R. Co.* 69 Pa. St. 210, 8 Am. Rep. 251; *New Orleans, J. & G. N. R. Co. v. Harrison,* 48 Miss. 112, 12 Am. Rep. 356. There is an exception to this general rule as to authority, that in case of emergency such authority is implied. This is shown by the authorities before cited. Another exception to the general rule is where the person aiding is at the same time engaged in expediting his own business, or the business of his master which he is employed to perform. *Wright v. L. & N. W. R. Co.* L. R. 1 Q. B. Div. 252; *Holmes v. N. E. R. Co.* L. R. 4 Exch. 254, L. R. 6 Exch. 123; *Street R. Co. v. Bolton,* 43 Ohio St. 224, 54 Am. Rep. 803; *Welch v. M. C. R. Co.* 86 Me. 552, 30 Atl. 116, 25 L. R. A. 658, 10 Am. R. R. & Corp. Rep. 293; *Eason v. S. & E. T. R. Co.* 65 Tex. 577. The rule in the last exception is doubted by reputable authority. Elliott, Railroads, § 1303. Every authority in favor of the exception shows that the act upon which the exception was invoked directly, positively, certainly, and immediately expedited the business of the doer or his master. *Street R. Co. v. Bolton,* 43 Ohio St. 224, 1 N. E. 333; *Eason v. S. & E. T. R. Co.* 65 Tex. 577; *Wright v. L. & N. W. R. Co.* L. R. 1 Q. B. Div. 252; *Welch v. M. C. R. Co.* 86 Me. 552, 30 Atl. 116. In the case of a volunteer the company is only liable for wilful injury. 3 Elliott, Railroads, § 1305; *Evarts v. St. P., M. & R. Co.* 56 Minn. 141, 57 N. W. 459, 22 L. R. A. 663, note, 45 Am. St. Rep. 460; *Vassor v. Railroad,* 142 N. C. 68, 72, 54 S. E. 849, 851; *Powers v. B. & M. R. Co.* 153 Mass. 188, 26 N. E. 446; *Atlanta & W. P. R. Co. v. West,* 121 Ga. 641, 49 S. E. 711; *Church v. C., M. & St. P. R. Co.* 50 Minn. 218, 52 N. W. 647, 16 L. R. A. 861; *Everhart v. T. H. & I. R. Co.* 78 Ind. 292, 41 Am. Rep. 567.

*John C. Hart,* attorney, and *B. R. Goggins,* of counsel, for
the respondent, argued, among other things, that the de-
fendant was negligent in running its engine upon the spur
track into these empty cars without warning; in doing so
without proper lookout; in doing so at a dangerous rate of
speed; in doing so without warning the plaintiff; in failing
to promulgate rules and regulations requiring warning to be
given of the movement of cars likely to injure the granite
company's employees. *Iltis v. C., M. & St. P. R. Co.* 40
Minn. 273, 41 N. W. 1040; *Bain v. N. P. R. Co.* 120 Wis.
412; *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 120 N. W.
858; *Polaski v. Pittsburg C. D. Co.* 134 Wis. 259; *Promer
v. M., L. S. & W. R. Co.* 90 Wis. 215; *Pennsylvania Co. v.
Backes,* 133 Ill. 255, 24 N. E. 563; *Chicago & N. W. R. Co.
v. Goebel,* 119 Ill. 515, 10 N. E. 369; *Maguire v. Fitchburg
R. Co.* 146 Mass. 379, 15 N. E. 904; *Toledo, St. L. & K. C.
R. Co. v. Hauk,* 8 Ind. App. 367, 35 N. E. 573; *North Chi-
cago R. M. Co. v. Johnson,* 114 Ill. 57, 59. It was within
the affirmative duty of plaintiff to be where he was, and the
work he was doing at the time of his injury was within the
scope of his duty to his master and was expediting his mas-
ter's business. He was not a mere interloper or mere volun-
teer. *Street R. Co. v. Bolton,* 43 Ohio St. 224, 1 N. E. 333;
*Meyer v. Kenyon-Rosing M. Co.* 95 Minn. 329, 104 N. W.
132; *Wright v. L. & N. W. R. Co.* L. R. 1 Q. B. Div. 252;
*Aga v. Harbach,* 127 Iowa, 144, 102 N. W. 833; *Railroad
v. Ward,* 98 Tenn. 123, 60 Am. St. Rep. 848; *Holmes v. N.
E. R. Co.* L. R. 4 Exch. 254, affirmed L. R. 6 Exch. 123;
*Catlett v. Young,* 143 Ill. 74, 32 N. E. 447, 449; *Welch v.
M. C. R. Co.* 86 Me. 552, 25 L. R. A. 658; *Ill. Cent. R. Co.
v. Hopkins,* 200 Minn. 122, 65 N. E. 656. Plaintiff was
requested to assist by the conductor, and was performing
services for the defendant, though also directly beneficial to
the granite company, and was therefore not an intermeddler
or trespasser, and while so employed was entitled to protec-

tion. *Johnson v. Ashland W. Co.* 71 Wis. 553, 556; *Sloan v. C. I. R. Co.* 62 Iowa, 728, 16 N. W. 331; *Meyer v. Kenyon-Rosing M. Co.* 95 Minn. 329, 104 N. W. 132; *Wagner v. Plano Mfg. Co.* 110 Wis. 48; *Aga v. Harbach,* 127 Iowa, 144, 102 N. W. 833; *Church v. C., M. & St. P. R. Co.* 50 Minn. 218, 52 N. W. 647. The fixing of the brake was a necessary act at the time, not only for the benefit of the defendant if it intended properly to anchor the cars, but also for the benefit of the granite company; for an efficient brake on this car was at the time a present necessity to the proper conduct of the business of both parties. The conductor was justified in this emergency in calling the plaintiff to his assistance, and while thus employed the plaintiff was entitled to protection. *Johnson v. Ashland W. Co.* 71 Wis. 553; *Files v. B. & A. R. Co.* 149 Mass. 204, 21 N. E. 311; *Fox v. C., St. P. & K. C. R. Co.* 86 Iowa, 368, 53 N. W. 259; *Ga. Pac. R. Co. v. Propst,* 83 Ala. 518, 3 South. 764; *Taylor v. B. & O. R. Co.* 108 Va. 817, 62 S. E. 798; *Vassor v. Railroad,* 142 N. C. 68, 54 S. E. 849.

The following opinion was filed October 5, 1909:

SIEBECKER, J. The facts disclose no express authority in the conductor to employ plaintiff to assist in the conduct of defendant's business. Nor do the facts and circumstances show a condition which warrants the inference that a sudden emergency had arisen in the doing of defendant's business which necessitated plaintiff's employment to conduct the defendant's business. Since there is no ground shown upon which plaintiff can be held to have been the servant of the defendant at the time of accident, no liability for this injury can exist within the relationship of master and servant.

It was plaintiff's duty, as foreman of the granite company's business, to attend to the reception of empty cars and to see that they were so placed on the side track that they could be handled and managed by the granite company's employees

for loading.    He had participated in this service and had rendered such assistance as occasion required to accomplish this object.    On the day in question he was so engaged while the railway company's switching crew tried to anchor the empty cars on the westerly part of the granite company's side track, and while so engaged in expediting his master's business he undertook, with the conductor's consent, to repair the car brake and was injured.    An efficient brake was as necessary for the conduct of the granite company's business as that of the defendant, and its repair served to further the common interest of both the granite company and the railway company.    Under such circumstances plaintiff was not a trespasser or intermeddler as to the defendant's business, but was engaged in that part of his master's business in which it and the railway company had a common interest.    His assistance in repairing the brake was therefore not a service for the defendant company, but one through which he was forwarding the interest and the business of his master.    Under such circumstances the defendant's liability for the negligence of its servants is recognized in the adjudications.

In the case of *Welch v. Me. Cent. R. Co.* 86 Me. 552, 30 Atl. 116, the court states the rule to be

"that where a mere volunteer—that is, one who has no interest in the work—undertakes to assist the servants of another, he does so at his own risk.    In such case the maxim of *respondeat superior* does not apply.    But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and, at the request or with the consent of another's servants, undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible.    In such case the maxim of *respondeat superior* does apply.    The hinge on which the cases turn is the presence or absence of self-interest.    In the one case the person injured is a mere intruder or officious intermeddler.    In the other he is a person in the regular pursuit of his own business, and entitled to the same protection as any one whose business relations with the master

expose him to injury from the carelessness of the master's servants."

Other cases illustrative of the rule are: *Street R. Co. v. Bolton,* 43 Ohio St. 224, 1 N. E. 333; *Martyn v. M. & I. R. Co.* 95 Minn. 333, 104 N. W. 133; *Eason v. S. & E. T. R. Co.* 65 Tex. 577; *Railroad v. Ward,* 98 Tenn. 123, 38 S. W. 727. See, also, 2 Labatt, Mast. & Serv. § 632. We are of the opinion that the facts and circumstances of this case bring it within the rule of these cases and make the defendant liable for the negligence of its servants which caused the injuries.

This leads to the inquiry whether the evidence warrants the finding that the defendant's servants were negligent. There is evidence tending to show that the side track within and west of the tunnel was not clearly visible to the trainmen east of the tunnel; that the person in charge of the empty cars as they passed over the track to the west kept a lookout for persons to warn them of the danger of the approaching cars; that men and teams were accustomed to be on and near the track during the switching operation; and that the plaintiff was customarily about there in the course of his duties, to see that the empty cars were properly placed and anchored on the side track. It is also in evidence that defendant's servants at the time in question kept no lookout and gave no warning to the plaintiff of the danger impending from the backing of the locomotive and the cars. In view of the situation of the track tunnel and the likelihood of plaintiff and others being near and about the track and cars at the time of switching, it was incumbent on the defendant's servants to keep a proper lookout and to give warning of the impending movement of the cars. From the situation disclosed the jury were warranted in concluding that defendant's servants were negligent as to these duties and failed to give a warning of the impending peril which was incident to the switching and respotting of the cars. This issue was submitted to the jury

by the special verdict under appropriate instructions and they found that the defendant's servants were negligent in this respect. This finding cannot be disturbed for want of evidence to support it, and hence the defendant must be held to have been guilty of the negligence charged.

It is urged that the plaintiff was guilty of contributory negligence in taking the position on the track at the time and place disclosed by the evidence. As we have shown, plaintiff was not a trespasser or an intermeddler. He had last observed the locomotive on the main track remote from the tunnel, and understood that it would not return onto the side track to respot the cars without a signal from the person in charge of the empty cars, which in this case the evidence tended to show was the conductor who invited him to assist in repairing the brake. Under these circumstances it was a question for the jury whether or not he was guilty of negligence contributing to produce his injuries. The court properly submitted this issue to them and their finding must stand.

There are numerous exceptions to rulings of the court on the admission and rejection of evidence over defendant's objection, to refusals to submit additional questions in the special verdict, to refusals to instruct the jury, and to the instructions given by the court. Of the numerous exceptions to the rulings on the admission and rejection of evidence many (too numerous to specify here) are mere irregularities which could not have affected the result to defendant's injury.

It is urged that the ruling permitting a witness to state that the conductor stated, after plaintiff crawled from under the cars, "He did not think himself that the engine was going to hit the car," was erroneous, upon the ground that there was nothing to show how long a time had elapsed since the accident; hence it was not admissible as part of the transaction and could not be received as an admission against the defendant. We discover no prejudicial effect from this statement.

It was undisputed that the locomotive hit the cars, that the conductor had given no signal for its backing, and that he did not expect it to do so while he and plaintiff were attempting to repair the brake. The statement obviously related to uncontroverted facts, and hence its admission in evidence could not prejudice the defendant.

The defendant objected to the form and sufficiency of the special verdict. We deem the verdict as submitted sufficient in form and phraseology, and find that under the pleadings and the evidence it covered all the issuable facts.

The instructions of the court appropriately and correctly informed the jury of the rules of law applicable to the case. We will therefore omit a detailed discussion of the many exceptions presented to rulings refusing to give requested instructions to the jury and exceptions to portions of the instructions given.

It is strenuously urged that the court erred in refusing to instruct: "Unless you are satisfied from the preponderance of the evidence that the second question should be answered 'Yes,' you should answer it 'No.'" The court instructed the jury that their answers to all of the questions should be "in accordance with what you shall believe to be the fair weight of the whole evidence," and then specifically directed them, in submitting each question in the special verdict where the burden of proof rested on the plaintiff, that if they so affirmatively believed from the whole evidence then they should answer the question accordingly, and if they were not so satisfied then they were to give the opposite answer. The phraseology is not that usually adopted to express the rule as to the burden of proof, and it would have been better if the court in framing the rule had employed the phraseology approved in the decisions as stating the rule, but we cannot say but that the language employed correctly informed the jury on whom the burden of proof rested respecting the issues submitted to them. Though the instruction is not strictly ac-

·curate in form, we cannot say that it misled the jury or af-
·fected the substantial rights of the defendant. *Beery v. C.
·& N. W. R. Co.* 73 Wis. 197, 40 N. W. 687. Other excep-
·tions on like grounds need not be noticed any further.

After an examination of the record it does not appear that
any of the errors complained of affected the substantial rights
·of the defendant, and hence no prejudicial error appears in
·the record. Sec. 2829, Stats. (1898); sec. 3072*m,* Stats.
·(ch. 192, Laws of 1909).

*By the Court.*—Judgment affirmed.

WINSLOW, C. J., took no part.

A motion by the appellant for a rehearing was granted
·January 11, 1910, and thereafter it was ordered that the re-
argument be limited to the following questions: (1) Does the
special verdict in this case sufficiently cover the ground of
defendant's liability found in the former opinion of this
·court? (2) Is there evidence to sustain such ground of lia-
·bility? (3). Was such ground of liability concluded by the
judgment below under sec. 2858*m,* Stats. (Laws of 1907,
·ch. 346)?

The cause was re-argued on April 29, 1910.

For the appellant there was a brief by *Walter D. Corrigan,*
·attorney, and *Glicksman, Gold & Corrigan,* of counsel, and
·oral argument by *Walter D. Corrigan.* They contended that
the special verdict does not sufficiently cover the ground of
defendant's liability found in the opinion of this court.
Such ground of liability is that plaintiff was "expediting his
own master's business." If plaintiff was more than a mere
volunteer it was because he was expediting the business of the
Wisconsin Granite Company, his employer. If such was the
·fact he was not a mere volunteer, and the duty owed by de-
·fendant was to exercise toward him ordinary care. From
·that relation to one's own company, being engaged in ex-

pediting the business he is employed to do, springs all the reason upon which the rule is founded that one in such a situation is something more than a mere volunteer.    The question whether plaintiff was more than a mere volunteer is therefore the one great and important question in the case, but that question was not tried or considered by court or jury on the trial.    *Street R. Co. v. Bolton,* 43 Ohio St. 224, 1 N.. E. 333, 335; *Wright v. L. & N. W. R. Co.* L. R. 1 Q. B. Div. 252; *Eason v. S. & E. T. R. Co.* 65 Tex. 577; *Welch v. M.. C. R. Co.* 86 Me. 552, 30 Atl. 116; 3 Elliott, Railroads (2d ed.) § 1305, p. 753; *Railroad v. Ward,* 98 Tenn. 123, 38 S. W. 727.    Liability cannot exist unless there is a finding by the jury, justified in the record, that the plaintiff was not a mere volunteer; but there is no such finding in the verdict, nor can such a finding be implied from any finding in the verdict.    There is no evidence to sustain such ground of liability.

*John C. Hart* and *B. R. Goggins,* for the respondent.    The ground upon which recovery is expressly sustained is that plaintiff was expediting his master's business, and that the repair of the brake served to further "the common interest of both the granite company and the railway company," a service "through which he was forwarding the interest and business of his master,"—broadly stated, that plaintiff was "rightfully there" otherwise than as the servant of defendant, and was therefore not a "trespasser or intermeddler."    A person may be "rightfully there" when the relationship of master and servant does not exist between him and the defendant: (a) When on invitation, without any idea on either side of creating the relation of master and servant, he is doing some single mechanical act without any benefit to himself but beneficial to defendant.    *Pennsylvania Co. v. Gallagher,* 40 Ohio St. 637, 48 Am. Rep. 689; *Railroad v. Ginley,* 100 Tenn. 472, 45 S. W. 348; *Goff v. T., St. L. & K. C. R. Co.* 28 Ill. App. 529; *Johnson v. Ashland W. Co.* 71 Wis.

553.   Also where there is found present some one or more of
the following conditions: (b) Assistance rendered upon re-
quest "in work connected with their employment."   (c) A
service "mutually · beneficial."   (d) "Personal interest" of
the plaintiff or his master.   (e) Assistance by one having an
interest in "adjusting or fixing an instrumentality" on invi-
tation by defendant or his servant.   *Welch v. M. C. R. Co.*
86 Me. 552, 25 L. R. A. 658; *Street R. Co. v. Bolton,* 43
Ohio St. 224, 1 N. E. 333; *Cleveland, T. & U. R. Co. v.
Marsh,* 63 Ohio St. 236, 52 L. R. A. 142; *Kelly v. Tyra,*
103 Minn. 176, 114 N. W. 750; *Meyer v. Kenyon-Rosing
M. Co.* 95 Minn. 329, 104 N. W. 132; *Eckert v. G. N. R. Co.*
104 Minn. 435, 116 N. W. 1024; *McConnell v. Pa. R. Co.*
223 Pa. St. 442, 72 Atl. 849; *Eason v. S. & E. T. R. Co.* 65
Tex. 577, 57 Am. Rep. 606; *Railroad v. Ward,* 98 Tenn. 123;
*Weatherford, M. W. & N. W. R. Co. v. Duncan,* 88 Tex. 611,
32 S. W. 878; *Texas & N. O. R. Co. v. McDonald* (Tex.)
85 S. W. 493; *Pickwick v. McCauliff,* 193 Mass. 70, 78 N.
E. 730; *Hartford v. N. Y., N. H. & H. R. Co.* 184 Mass.
365, 68 N. E. 835, 836; *Mo., K. & T. R. Co. v. Thomas,* 48
Tex. Civ. App. 646, 107 S. W. 868; *C., N. O. & T. P. R.
Co. v. Rodes,* 31 Ky. Law Rep. 430, 102 S. W. 321; *Ma-
guire v. Fitchburg R. Co.* 146 Mass. 379, 15 N. E. 904, 908;
*Rink v. Lowry,* 38 Ind. App. 132, 77 N. E. 967, 969, 970;
*Hudgens v. St. L. & S. F. R. Co.* 139 Mo. App. 44, 119 S. W.
522; *Dooley v. M., K. & T. R. Co.* (Tex. Civ. App.) 110 S.
W. 135; *Chicago & A. R. Co. v. Pettit,* 111 Ill. App. 172;
*Balt. & O. R. Co. v. Charvat,* 94 Md. 569, 51 Atl. 413; *To-
ledo, St. L. & W. R. Co. v. Miller* (Ind. App.) 88 N. E.
968; *Balt. & O. S. W. R. Co. v. Trennepohl* (Ind. App.) 87
N. E. 1059; *Louisville & N. R. Co. v. Crow* (Ky.) 118 S.
W. 365; *Louisville & N. R. Co. v. Hurst* (Ky.) 116 S. W.
291; *Smalley v. R. G. W. R. Co.* 34 Utah, 423, 98 Pac. 311;
*Shall v. D. & M. R. Co.* 152 Mich. 463, 116 N. W. 432;
*Tinkle v. St. L. & S. F. R. Co.* 212 Mo. 445, 110 S. W. 1086;

*Louisville & N. R. Co. v. Farris,* 30 Ky. Law Rep. 1193,
100 S. W. 870; *Louisville & N. R. Co. v. Smith,* 27 Ky.
Law Rep. 257, 84 S. W. 755; *Central of Ga. R. Co. v. Duf-
fey,* 116 Ga. 346, 42 S. E. 510; *Watson v. W., St. L. & P. R.
Co.* 66 Iowa, 164, 23 N. W. 380; *Lowenstein v. Mo. Pac. R.
Co.* 134 Mo. App. 24, 119 S. W. 430; *Eaton v. N. Y. C. &
H. R. R. Co.* 195 N. Y. 267, 88 N. E. 378; *Barry v. H. &
St. J. R. Co.* 98 Mo. 62, 11 S. W. 308, 14 Am. St. Rep. 610;
*Chicago, I. & L. R. Co. v. Pritchard,* 168 Ind. 398, 79 N. E.
508, 81 N. E. 78, 9 L. R. A. n. s. 857, 865; *Klugherz v. C.,
M. & St. P. R. Co.* 90 Minn. 17, 95 N. W. 586, 101 Am. St.
Rep. 384; *Rowley v. C., M. & St. P. R. Co.* 135 Wis. 208,
218, 219, 115 N. W. 865; *Ill. Cent. R. Co. v. Hopkins,* 200
Ill. 122, 65 N. E. 656; *Elgin, J. & E. R. Co. v. Thomas,* 215
Ill. 158, 74 N. E. 109; *Hudson v. Railroad,* 142 N. C. 198,
55 S. E. 103; *Bain v. N. P. R. Co.* 120 Wis. 412, 98 N. W.
241; *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, 63 N.
W. 90, 48 Am. St. Rep. 905; *Ft. W. & R. G. R. Co. v.
Eddleman* (Tex. Civ. App.) 114 S. W. 425; *Iltis v. C., M.
& St. P. R. Co.* 40 Minn. 273, 41 N. W. 1040.

The following opinion was filed May 24, 1910:

SIEBECKER, J.    The propositions urged by the appellant
on this rehearing are that by the decision of this court its
liability to plaintiff is placed upon the relation existing be-
tween it and the plaintiff as an employee of the granite com-
pany, while he was engaged in a service which furthered the
common interest of the defendant and his employer; that the
issues as to this liability were not litigated or determined at
the trial before the lower court; and, if judgment can be
awarded on the existing state of the record, it should be in
appellant's favor.

There is no controversy but that the rule of liability which
was applied to the case in the decision of this court is well
established by the adjudications.    The contention is that the

question of defendant's liability under this rule of law was not litigated at the trial, and that, upon the facts found by the jury and the undisputed evidence in the record, no case was established which entitled plaintiff to recover as this court decided. These subjects have been ably argued by counsel for the respective parties, and their collection of the adjudications in elucidation of them will be preserved in the published report of the case for future aid and reference.

The decision of the case rested on the ground that plaintiff at the time of injury was performing a service within the scope of his employment and duties and that it furthered the common interest of his master and the railroad company. It is earnestly argued that this conclusion is erroneous, because there is no finding by the jury that plaintiff was performing an act which furthered the common interest of the defendant and the granite company, and that the undisputed evidence will not permit of such an inference. It is claimed that the evidence tends to show that plaintiff's duties in no way required him to be near the cars which were being switched, or to assist in spotting and anchoring them on the granite company's switch track. The facts relied on for this contention were brought to our attention at the former argument, and re-examination of them convinces us that our conclusions respecting plaintiff's duty to attend to the reception of empty cars and see that they were properly placed and anchored on the switch track preparatory to loading by the granite company's employees are correct, and that plaintiff was rightfully at and about the place and track when this switching was being done. It is manifest that the cars were to be so anchored and placed at the time they were switched onto the side track as to facilitate the business of the granite company, and that the plaintiff was delegated to see that this purpose and object was accomplished. In the course of the performance of this duty he would go near the track so as to be on the ground at the time of switching, and would partici-

pate in the operation of anchoring the cars by directing and
placing the cars on the track where they could be most con-
veniently and expeditiously prepared and handled for load-
ing.   On the occasion in question it appears that he at-
tempted to block the rear car at the proper place of anchorage,
when he discovered that it had started to run toward the tun-
nel.   These facts, and the accompanying circumstances of
the conduct of this business by the defendant and the granite
company, make it clear that plaintiff was performing duties
in the line and scope of his employment as a servant of the
granite company, and that he and the railroad company's
employees were mutually engaged in anchoring the empty
cars on the side track.   In view of these facts and circum-
stances and the situation in which the plaintiff was placed
while so engaged with defendant's servants in accomplishing
this purpose, we discover no room to question but that the
service so rendered by them was mutually beneficial, both to
the railway company and to the granite company.

It is vigorously contended that the plaintiff's participation
in the work of repair of the brake shows as a matter of law
that what he did was wholly outside of his master's business,
and that he at the time stepped out of his employment, and
that he was a trespasser, intermeddler, or mere volunteer in
going onto the track in the rear of the car to participate in
adjusting the brake.   The argument is that the repair of
this brake was an act peculiarly within the exclusive duty of
the defendant's employees and wholly foreign to plaintiff's
duties; that it was wholly unnecessary to make such repair
to enable the defendant to spot and anchor the car; and that
neither the granite company's nor the defendant's business
required this service to be done at this time and place.   We
perceive nothing in the nature of this repair to support the
claim that it was peculiarly within the duties of the servants
of the railway company.   It was a simple defect, of an or-
dinary nature, which any person engaged in anchoring these

cars might readily undertake to remedy. The claim that it was wholly outside of the scope of plaintiff's employment, in view of his relation to the business that was being conducted by the railway company for the granite company, is, in our opinion, not well sustained.

We have adverted to plaintiff's duties in acting for the granite company in the conduct of this particular business. It is evident from the facts shown that an efficient brake was an important essential for spotting and anchoring the cars by the railroad company. It also appears that it was an important and serviceable device for handling the cars so as to have them spotted and anchored where the granite company wished to have them placed for loading and putting its product in transit for the market. These various uses of the brake made it mutually and beneficially serviceable to both companies for their immediate and future purposes. In the light of this situation, its immediate repair was most natural and appropriate, and the fact that the railroad company could thereafter have repaired it does not militate against plaintiff for participating in making the repair, or tend to show that he was a meddlesome participant in this attempt to provide an efficient brake. The conduct of the defendant's conductor and plaintiff in dealing with the situation thus presented to them in the course of their employment accords with a reasonable compliance with their duties, and tended to further the immediate purposes of the objects of the service they were charged to perform, and establishes the fact that the plaintiff was rightfully there to help fix the brake.

The evidence respecting the service that was being performed and the consequent relation it bore to plaintiff is not in dispute, except as to whether or not he stepped upon the track at the request of Conductor Dixon and undertook to assist in the repair of the brake at the place of accident. This specific issue of fact is covered by the fourth question in the special verdict and is answered in the affirmative. It there-

fore follows that the record as to these facts is complete and sufficient and no further trial of them is necessary.

The controversies between the parties respecting the defendant's negligence, its proximate causation of the accident, and plaintiff's contributory negligence are not open to inquiry on this rehearing. The record, therefore, presents a determination of all the issues raised by the pleadings and the evidence essential to plaintiff's cause of action. From the facts established it is considered that the plaintiff was rightfully at the place of accident and engaged in a service in which his master and the railway company had a common beneficial interest, and hence that he is entitled to recover his damages, and the judgment must stand.

*By the Court.*—Judgment affirmed.