WILCZYNSKI, Respondent, vs. MILWAUKEE ELECTRIC RAIL-
WAY & LIGHT COMPANY, Appellant.

*January 15—June 1, 1920.*

*Negligence: Proximate cause: Improper installation of electric
motor: Ineffectual attempt to repair.*

In an action for the death of an employee of one using an electric
motor, the negligence of the defendant electric company in
failing to properly repair and install the motor was not the
proximate cause of death by electric shock, where, after the
installing and attempted repair by defendant, an employee of
decedent's employer attempted to make such repairs as would
render the apparatus safe, both decedent and his employer
having knowledge that defendant had not properly installed
and repaired the motor.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

Anton Karbowski, while at work in the yard of the
Kanawha Fuel Company on the 31st day of July, 1916, was
instantly killed by an electric shock. The widow claimed
compensation under the workmen's compensation act. The
making of the claim operated, under the provisions of that
act, to assign to the Kanawha Fuel Company her claim
against the defendant company, she claiming that the death
of her husband was due to the negligence of the defendant.
The Kanawha Fuel Company then re-assigned the cause of
action to the widow. As plaintiff in this action, she having
remarried, she claims under and by virtue of such assign-
ment.

At the time of his injury Karbowski was engaged in
handling a coal bucket which was being used to unload coke
from a gondola car. The bucket was operated by means
of a fifty-two horse-power electric motor geared to a drum,
with which it was connected by steel cables. The motor
was on a wooden structure and not metallically connected
with the ground, but there was a complete metallic connec-
tion between the frame of the motor and the bucket, by

means of the gears, the drum, and the steel cables; and if a person touched the clam shell while standing on the ground, or metallically connected therewith, his body would complete the electrical circuit between the frame of the motor and the ground.

The Fuel Company employed the defendant company to install the electrical apparatus used in unloading this car. The particular motor in question gave some trouble during the week preceding the accident, and the defendant took a part thereof to its shop, repaired it, and it was replaced by the defendant on the day of the accident. The motor was then started, and appeared to operate properly. A few minutes later, and before the employees of the defendant had left the premises, Karbowski, who was handling the bucket on the car of coke, complained of receiving an electric shock. The defendant's employee upon being notified of this fact discovered that there was a presence of electricity on the motor frame, which he correctly thought to be due to static electricity. He sought to remedy this by placing a wire from the motor frame to the other machinery, and, after having installed the wire, left the premises. In the afternoon about 1:30 Karbowski again complained of the presence of electricity. Bartls, one of the defendant company's employees, picked up a shovel, grasped the wooden handle with one hand, and in Karbowski's presence touched the end of the shovel to the clam shell. He received so severe a shock that he was thrown some distance, and the shock was so great that he could not touch the bucket at all.

Bartls and Andweg, the operator of the motor, neither of whom knew anything about electrical appliances, then looked the motor over to see where the trouble lay. They found the short wire installed by the defendant's employee, and, considering it to be useless, as in fact it was, removed it. They discovered that the motor frame was not grounded. At a previous time, when engaged in operating the same motor, Andweg had observed that there was a ground

wire running from the motor. He then procured from the store room a piece of wire and attached one end of it to the frame of the motor and the other end to the head of an iron rod some two feet long, and shoved the rod into the ground its full length. The wire was a No. 12 iron wire. Andweg then started the motor again, and Bartls, who was the foreman, touched the clam shell and received no shock. The work of unloading the car then continued, Bartls handling the bucket in place of Karbowski, until about 4 o'clock. Bartls then turned the work over to Karbowski while he made a temporary tightening of the friction on the hoisting drum. Karbowski grasped the bucket as it was raised out of the car, and fell over dead from an electric shock.

The explanation given by an electrical expert is this: The electric power for operating the motor was furnished over a three-phase system consisting of three wires called phase wires, all of which carried electric current. The normal voltage between any one wire and the ground was about 240 volts, but the voltage from one wire to another wire was about 480 to 530 volts. A single connection from one phase wire to the ground would not result in any escape of current in excess of 240 volts, because there would be no complete circuit from one phase wire to another. Such a circuit would be completed, however, if two phase wires became simultaneously grounded, because the full current of 530 volts would then flow from one wire through the ground and back to the other wire. Due to some defect in the motor operating the clam shell, resulting, as the jury found, from the defendant's negligence, the frame of the motor was permitted to become electrified. A properly installed ground wire from the frame of the motor to the ground would have carried off any current so escaping to the frame of the motor. There being no ground wire in this case up to the time that Andweg installed his wire, the only path to the ground was out over the hoisting cables to the clam shell and through the body of any person who might touch the clam shell while connected with the ground.

But such current, escaping in that manner, would not be the full 530° volts, unless some phase wire other than the one that was grounded in the motor became grounded at another point. Until that time the only current that would flow through the frame of the motor, through the clam shell and the man's body, would consist of what is known as static electricity, which is not apt to be dangerous.

It is conceded that the shock which Bartls received about 1:30 could not have been due to static electricity. The peculiar manifestations at these specified times were accounted for upon the theory that at the moment these shocks were received there occurred a ground somewhere else on the system, affecting a different phase wire than the one that was grounded in the clam-shell motor, so that the man's body completed a circuit for the full 530 volts of dynamic current. There was evidence tending to show that the second ground occurred in the yards of another fuel company which at the same time was having trouble with a grounded motor.

It is conceded that the wire which Andweg attached to the motor frame and grounded was totally insufficient to conduct a current such as reached the machinery at the times in question, it having only about one twelfth of the carrying capacity of the wiring required under the rules of the industrial commission.

The jury found that the defendant was negligent; that the installation of the inadequate wire did not proximately contribute to Karbowski's death; that the installation of the ground wire did not make the place of employment unsafe; that the Kanawha Fuel Company did not fail to do everything reasonably necessary to protect the life, health, and safety of its employees after learning that electric shocks were felt at the clam shell; and assessed the damages at $5,250.

There were the usual motions, and the plaintiff had judgment upon the verdict, from which the defendant appeals.

For the appellant there were briefs by *Van Dyke, Shaw,*

*Muskat & Van Dyke,* and oral argument by *Ralph M. Hoyt,* all of Milwaukee.

*H. M. Burns* and *E. L. McIntyre,* both of Milwaukee, for the respondent.

ROSENBERRY, J.    Upon this appeal the defendant contends that the plaintiff cannot recover because her assignor, the Kanawha Fuel Company, was guilty of contributory negligence as a matter of law which proximately caused Karbowski's injury; that such contributory negligence of the Kanawha Company bars plaintiff's action, since she sues as assignee of that company; and that the defendant's negligence was not a proximate cause of Karbowski's death.

In view of the conclusion which we have reached we shall not treat the questions raised under the first two assignments of error.    If the negligence of the defendant company was not the proximate cause of Karbowski's death, the defendant cannot be held liable in any event.    It appears practically without dispute that the negligence of the defendant company consisted in its failure to properly repair and install the motor, as it was bound to do under its contract with the Fuel Company, and that such negligence resulted in the motor frame and the apparatus controlling the bucket becoming heavily charged with dynamic electricity.    It is further undisputed that the Fuel Company through its employees and the deceased Karbowski were fully apprised of the danger in using the motor, and the apparatus controlling the bucket, in that condition.    The continued use of the apparatus in its then known condition would have constituted contributory negligence as a matter of law.    The deceased saw Bartls thrown several feet by coming in contact with the bucket.    In the absence of some intervening act, no sane man would have continued to use the apparatus.    The Fuel Company by its employees assumed and attempted to make such a repair as would render the apparatus reasonably safe.    Its failure to do this was the immediate and proximate cause of decedent's injury.

In a physical sense it may be said that the negligence of the defendant contributed to the injury, for had not the motor been insufficiently repaired and improperly installed the dynamic current would not have been present in sufficient amount to be dangerous. In order to make defendant liable its negligence must not have been only a cause, but a proximate cause—that is, an immediate cause—of Karbowski's death.

This court has said:

"Whenever a new cause [independent intervening circumstance] intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action." *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271.

The circumstances in this case show that the act of the Fuel Company's employees answers every call of the definition of an intervening cause, which renders the negligence of the defendant company so remote that it cannot be said to be a proximate cause of Karbowski's injury. The defendant company could not reasonably anticipate that workmen who had discovered the presence of a powerful dynamic electrical current which appeared to them to be so dangerous that they desisted from all work, would make a repair, especially when, as here, they knew absolutely nothing about electricity or electric apparatus. *Horton v. Forest City Tel. Co.* 146 N. C. 429, 59 S. E. 1022. In *Kumba v. Gilham,* 103 Wis. 312, 79 N. W. 325, it was held that one is not required to anticipate the improper conduct of a third party. In this case the attempted repair was not only improperly made, but done in direct violation of regulations made pursuant to statute. The ineffectual attempt of the Fuel Company's employees to make the repair had the effect of assuring decedent that the place was reasonably safe, and he re-

sumed his work relying upon that assurance. Karbowski undoubtedly believed that by reason of the attempted repair the element of danger was entirely removed and that the place in which he worked was reasonably safe. He had full knowledge of the effects of the defendant's failure to perform its duty. The thing upon which he relied in again entering the danger zone was the act of the Fuel Company. The negligent act of the Fuel Company's employees, and so the act of the company, was therefore the immediate and proximate cause of his death, rather than the negligence of the defendant, which by the intervening act of the Fuel Company had become remote and not a proximate cause. *Seaver v. Union,* 113 Wis. 322, 89 N. W. 163.

We are of the opinion, therefore, that the trial court was in error in awarding judgment against the defendant.

*By the Court.*—Judgment reversed.

SIEBECKER, VINJE, and OWEN, JJ., dissent.