Brennan, Respondent, vs. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant.

*January 6—February 4, 1936.*

For the appellant there were briefs by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the respondent there was a brief by *Clifford & Dilweg* of Green Bay, and oral argument by *G. F. Clifford.*

NELSON, J. On February 25, 1932, the plaintiff, a resident of De Pere, was employed by one John Keefe, a contractor, to assist him at Chilton in loading a heavy gasoline tractor shovel onto a flatcar furnished by the defendant, preparatory to shipment. February 25th was a cold wintry day. When the work of loading began, the flatcar was spotted upon a track known as the elevator track which was located some distance from the main line. Some time after the shovel was loaded, but before it had been securely blocked, the flatcar was moved by one of defendant's train crews and spotted on the house track, which ran parallel with the main line (a north and south track), and quite close to it. The distance between the west rail of the main line and the east rail of the house track was nine feet five and five-eighths inches. The overhang of the flatcar was two and one-half feet. The overhang of the locomotive which struck the plaintiff was two and one-half feet, so the distance between the overhang of the flatcar and that of the locomotive was four feet five and five-eighths inches. The work of blocking the shovel and otherwise preparing it for shipment proceeded after the flatcar was removed to the house track. The particular work which the plaintiff was doing was the blocking of the track of the tractor. This consisted of spiking blocks of wood to the flatcar at each end of the tractor. During the early afternoon of the day in question, the plaintiff completed the work he had to do on the west side of the car. He then came around to the east side of the flatcar which was next to the main line, and there continued the work of blocking the tractor. According to his testimony, he worked on that side of the car for about half an hour.

He had either just finished or was about to finish his work on the east side of the shovel when he was struck on his left elbow and left side by the end of the pilot beam of a heavy-duty locomotive pulling a time freight in a southerly direction. The plaintiff was knocked down and severely injured. The plaintiff's injuries were such as clearly to indicate that at the time he was struck the left side of his body was sufficiently close to the west rail of the main line to be within the overhang of the pilot beam. About five hundred feet north of the place of the accident there existed a highway crossing. From the place of the accident to that crossing the main-line track was practically straight. As the train approached from the north, and at a point about a quarter of a mile from the station, the locomotive whistle was blown for the station. A few moments later the whistle was again blown for the crossing. The crossing whistle post was located about eight hundred feet north of the crossing and about fourteen hundred feet north of the place of the accident. The whistle for the crossing consisted of two long and two short blasts, and continued practically up to the crossing. The plaintiff testified that he did not hear the whistle, did not hear the bell, and did not hear the approach of the train. Just prior to and at the time of the accident the engine of the shovel was being operated for the purpose of lowering the boom. The engineer of the locomotive testified that he was maintaining a lookout, but did not observe the plaintiff until just a moment before the accident, when the plaintiff stepped out from between the cars and into the path of the locomotive, and that there was then no time to blow the whistle and warn the plaintiff before he was struck. The plaintiff, however, denied that just before the accident he came out from between the north end of the flatcar and a boxcar located about ten to fifteen feet therefrom. He testified that he had been working continuously on the east side of the flatcar for about half an hour. The plaintiff testified several times in response to questions asked by the attorney for the defendant

that he imagined, that it was his best recollection, that at the time he was struck he was just finishing the work of blocking the tractor, that he was using an ordinary hammer, and was probably standing about two feet from the flatcar. The plaintiff knew that he was working close to the main line upon which trains ran, but denied that he was familiar with defendant's train schedule. The freight train involved in the accident was running about an hour and a half late. The plaintiff occasionally looked up the track, but concededly did not and could not, while performing his work, maintain a continuous lookout. At the time of the accident, besides the engineer and fireman, the head brakeman and a Mr. Magnuson, defendant's chief fuel supervisor, were riding in the cab. On that particular trip Mr. Magnuson was conducting a fuel test in connection with the operation of a mechanical stoker which shortly before had been installed in said locomotive.

The defendant first contends that the court erred in failing to direct a verdict in favor of the defendant and in failing to grant its motion for a judgment notwithstanding the verdict. These two assignments of error are in all respects similar and may be considered together. In support of its contention, the defendant argues that the plaintiff, upon whom rested the burden of proving that the defendant was negligent, failed to do so. It contends that the plaintiff's version of the accident was contrary to the physical facts, and that therefore his testimony was so incredible as to be without probative effect as against the positive testimony of its engineer. We agree that the plaintiff could not have been struck while he was working within two feet of the flatcar. We agree that the physical facts undisputably show that the plaintiff was struck while he was standing or walking close enough to the west rail of the main-line track to be hit a hard but glancing blow on the left side of his body in the region of the fourth, fifth, sixth, and seventh ribs. The clearance

between the flatcar and the pilot beam of the locomotive was as before stated four feet five and five-eighths inches. It appears that the plaintiff's recollection was somewhat hazy as to just what he was doing at the time he was struck, and as to just what position he was in. But considering all of the testimony of the plaintiff, we are of the opinion that it was within the province of the jury to infer, that he was continuously working on the east side of the car for about half an hour before he was struck; that the place where he was working was within the defendant's railroad yards at Chilton; that his position at the time he was struck was about two feet from the west rail of the main line; that had the engineer maintained a proper lookout ahead he would have observed that the plaintiff was in a dangerous and hazardous position even though not where the pilot beam would strike him; that had the engineer maintained a proper lookout he would have observed the presence of the plaintiff in time to have blown the whistle and to have warned him of the approach of the train; that the failure of the engineer to observe that the plaintiff was at the side of the flatcar, and the failure to give timely warning of the approach of the train, constituted causal negligence.

It is our conclusion that the negligence of the defendant was clearly a jury question. The plaintiff was an invitee engaged in performing work not only beneficial to his employer, but also to the defendant. 52 C. J. p. 538. The defendant owed to him the duty of exercising ordinary care to avoid injuring him. 52 C. J. p. 619. Compare note 36, 44 A. L. R. 1083.

It is the settled law of this state that it is the duty of engineers or trainmen to maintain a reasonable and proper lookout in the direction a train is moving, and to give warning of the train's approach even to licensees who are upon or near to the tracks in positions of danger. *Haecker v. Chicago, M. & St. P. R. Co.* 194 Wis. 358, 216 N. W. 528;

*Johnson v. Lake Superior Terminal & Transfer Co.* 86 Wis. 64, 56 N. W. 161; *Whalen v. Chicago & N. W. R. Co.* 75 Wis. 654, 44 N. W. 849.

The defendant next contends that the court erred in not changing the answer of the jury to question No. 3, by which the jury found that the bell of the locomotive was not ringing at the time of the accident. There was testimony on the part of the defendant that the bell was ringing. Neither the plaintiff, nor another member of the tractor crew, who was on the flatcar at the time of the accident, heard the bell. However, no question was submitted to the jury as to whether the failure to ring the bell constituted a cause of the accident, so we think that even though the court had changed the answer to question No. 3 from "No" to "Yes," it would have had no material effect upon the right of the plaintiff to recover upon the verdict rendered.

The defendant next contends that the court erred in failing to change the answers to questions No. 4 and No. 5, from "Yes" to "No." In answer to question No. 4, the jury found that the engine crew failed to maintain a lookout in the direction in which the train was traveling, and in answer to question No. 5, that the defendant failed to give timely warning of the train's approach. In view of what has already been said in discussing the first and second assignments of error, it is unnecessary again to recite the evidence which, in our view, permitted the jury to find that the engine crew failed to maintain a proper lookout and to warn the plaintiff of the approach of the train.

The defendant finally contends that a new trial should have been granted because of the answers to the tenth question. In that question the jury was asked to find the percentages of negligence attributable to the defendant and to the plaintiff. It found that the negligence of the defendant amounted to eighty-five per cent and the negligence of the plaintiff fifteen per cent. It is contended that such findings

indicate perverseness, and that therefore a new trial should have been granted. The jury found that the plaintiff was negligent with respect to keeping a proper lookout and listening for the approach of trains, and that such negligence was a cause of the accident. Such findings are, of course, not questioned by the defendant. But it is contended that, having found the plaintiff negligent, the finding that the negligence attributable to him was only fifteen per cent of the causal negligence was so disproportionate under the circumstances as to amount to perversity. To that contention we cannot subscribe. It has been held several times, since the enactment of the comparative negligence law, that where the negligence of the parties differs in kind and quality this court will not attempt to classify, evaluate, and compare them. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97; *Brown v. Haertel,* 210 Wis. 352, 244 N. W. 633; *Bent v. Jonet,* 213 Wis. 635, 252 N. W. 290. It has been held that where a jury improperly found a certain negligent act to be a cause of the accident, when as a matter of law it was not, this court would reverse the action and grant a new trial in order to permit a jury to pass upon the comparative negligence issues. *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721. Compare, *Hammer v. Minneapolis, St. P. & S. S. M. R. Co.* 216 Wis. 7, 255 N. W. 124. In the latter case it was intimated that the jury's findings of fifteen per cent negligence on the part of the plaintiff and eighty-five per cent on the part of the defendant, gave rise, under the particular facts of that case, to grave doubts as to whether such findings, even assuming that the speed of the train was a cause of the accident, could be permitted to stand.

In a number of cases where the facts were somewhat similar to those here, and where the juries found the plaintiffs not negligent, those findings were permitted to stand. *Johnson v. Lake Superior Terminal & Transfer Co., supra;*

*Hendrickson v. Wisconsin Central R. Co.* 143 Wis. 179, 122 N. W. 758, 126 N. W. 686; *Collins v. Chicago & N. W. R. Co.* 150 Wis. 305, 136 N. W. 628; *Hollenbeck v. Chippewa Sugar Co.* 156 Wis. 317, 144 N. W. 1104.

Applying the rules of those cases here, we may say that had the jury in this case found that the plaintiff was guilty of no negligence contributing to the accident, such finding would in all probability have been permitted to stand. It is undisputed that the plaintiff was required to work in a dangerous and hazardous position as a result of the acts of the company, that it was a cold, wintry day, that the very nature of his work was such as to make it quite impossible to maintain a constant lookout for trains, and that at the time of the accident it was noisy where he was working because the tractor engine was running. Working there he might reasonably assume that his presence between the flatcar and the main line would be observed, and that timely warning of the approach of any train would be given. We think that these facts, while clearly permitting the inference of the jury that he was negligent, tend to support rather than to militate against the conclusion of the jury that his negligence contributed in a causal way to the accident only to the extent of fifteen per cent. Had the defendant company observed the plaintiff, and given him timely warning of the approach of the train by sharply blowing the whistle, it is not illogical to conclude that he would have heard it and stepped aside to a place of safety.

*By the Court.*—Judgment affirmed.