SIKORA, Respondent, vs. GREAT NORTHERN RAILWAY COMPANY, Appellant.

*November 11, 1938—February 7, 1939.*

284

For the appellant there were briefs by *Hughes & Anderson* of Superior, and oral argument by *C. J. Hughes.*

For the respondent there were briefs by *Crawford & Crawford* of Superior, and oral argument by *Raymond E. Crawford* and *Brandon E. Crawford.*

The following opinion was filed December 6, 1938:

M̲artin, J. The appellant makes the following assignment of errors:

1. The court erred in denying defendant's motion for a directed verdict.

2. The court erred in denying defendant's alternative motions after verdict:

a. To change the answers of the jury to certain questions in the special verdict, and for judgment upon such verdict as so amended.

b. To set aside the verdict and for a new trial:

(1) Because the verdict is contrary to law and to the evidence.

(2) Because the percentages of negligence attributed to the respective parties are grossly disproportionate.

(3) Because plaintiff's counsel, in his argument to the jury, made improper and prejudicial remarks.

(4) Because the damages are excessive.

3. The court erred in granting plaintiff's motion for judgment.

It appears that plaintiff was employed by the Carnegie Dock & Fuel Company in the capacity of a car cooper. His work in this connection consisted of preparing empty cars for loading. At times he did other work about the dock. On the day in question the defendant's engine and train crew

were at work on the dock, engaged in switching operations from 8 a. m. until the accident occurred, with the exception of a twenty-minute lunch period at noon. They had lunch at a switch shanty located about a mile south of the dock. The engine and crew returned to the dock at about 2 p. m. When they returned to the dock, a stop was made at the dock foreman's office to get orders as to the work the dock foreman wanted done. It appears that there was a string of twenty-six empty cars and three loaded cars on the loading track at the south end of the dock. The dock foreman, Gormley, directed the switch foreman, De Shane, to pull the twenty-six empty cars and the three loaded cars northward on the loading track. The three loaded cars were to be cut off and the empties pulled far enough north from the loaded cars so that there would be space to unload each of the three cars at the same place. The three loaded cars were to be unloaded one at a time, and as each car was unloaded, it was to be moved northward and the next car to the south was then to be brought to the same spot and unloaded and then moved northward. When this operation was completed, the instructions to the train crew, given by Mr. Gormley, were to take out of the dock thirteen loaded cars which at the time were on the north end of the dock. The engine and crew came onto the dock in the afternoon, on the "main" track and proceeded thereon to a point in the vicinity of the dock foreman's office where they received the orders above mentioned. While coming onto the dock at about 2, the switch foreman, De Shane, saw the plaintiff. He was walking at that time in a northerly direction on the track next to the one the engine was on. This was about twenty minutes before the accident occurred. The day was clear and the visibility good.

It appears that when the engine pulling the twenty-six empty cars came in contact with the thirteen loaded cars on the north end of the dock, the engine could not push the

loaded cars to the north and pull the empties at the same time. The wheels of the locomotive slipped, and it was necessary to cut off the empties and shove the loaded cars northward alone. Following this movement of the thirteen loaded cars, the dock foreman observed that the string of empty cars should be moved farther north on the loading track. De-Shane thereupon signaled for the engine to return to the string of empty cars. When the engine came back, De Shane coupled it on the north end of the string of empty cars, and they were then pulled fifty or sixty feet farther north. It was on this movement of the string of empty cars that plaintiff was injured. It further appears that when De Shane got orders from the dock foreman for the work for the afternoon, he and Switchman Novak went to the south end of the dock to operate the northward movement of the twenty-six empties and the three loaded cars to which reference has been made, and Switchman Harrington went to the north end of the dock to see that the couplers on the thirteen loaded cars were in proper position and that the pressure on the brakes was off so that the engine could couple up these cars when the engine backed down on the loading track. The engine crossed over on the southerly crossover from the "main" track to the "loading" track and coupled on the twenty-six empties and the three loaded cars, pulling them north on the "loading" track as above indicated. Switchman Novak did not participate in and was not present during the movement of the cars when plaintiff was injured. None of the engine crew saw the plaintiff immediately before the movement in which he was injured. They did not see him at any time engaged in any work on the east side of the string of empty cars nor did the dock foreman know that plaintiff was around the empty cars.

Plaintiff testified that about ten or fifteen minutes before the accident, he was talking to one of his fellow dock work-

men who was on the west side of the string of empty cars. Plaintiff was then on the east side of said cars. There is some conflict in the evidence as to what was said. The plaintiff testified that his fellow workman "asked me to come over and help him take care of some screens on the rig." This is denied by his fellow workman who testified:

"Just before this accident happened I was over at the rig, with the screen. I was there all the time. I had some talk with Mr. Sikora that day. That must have been about five or ten minutes before the accident. We were working near where he was working. We took down the screen. The screen was west of him on the other side of the rig. We were about twenty-five feet or so west from where Martin was. We took down the screen. We were working on the part of the dock where the coal is piled. When I saw Martin there I told him we were through with the loading, that we were going to the little dock and unload some cars there. I told him to go. We unloaded retail cars there. That means we would get in some overtime."

The plaintiff was injured while attempting to climb over the coupler between two cars. Plaintiff's height was five feet one inch. Plaintiff claims that he was working on the east side of the string of empties before he attempted to cross over to the west side. He admits that before he went between the cars, he looked and saw the locomotive. He further testified:

"He wasn't sure whether the locomotive was coupled to the string of cars but he didn't want to go around the cars because it would take too long."

He was standing on the coupling when the engine started. In this connection, he testified:

"I went through the cars and then the engine began immediately and jarred me down to the ground and as I fell I caught onto some brakes attached to the wheels but my foot got under the wheel."

Plaintiff was found under the seventeenth car from the engine. Gormley, the dock foreman, testified that when the engine is on the "loading" track, there is always danger of the cars being moved.

"My men understand that they are to watch out for that when the engine is on the loading track."

The jury's finding that the plaintiff failed to exercise ordinary care for his own safety is sustained by the plaintiff's own testimony; also the finding that the plaintiff should have reasonably foreseen that some injury to himself might probably follow from his failure to exercise ordinary care for his own safety. On the evidence, had the jury answered otherwise, we could not permit the answer to stand, and, for the same reason—that is, because it is not sustained by any credible evidence—we must set aside the jury's answer "No" to the twenty-first question of the special verdict whereby the jury found that the injuries to the plaintiff were not a natural and probable result of his failure to use ordinary care for his own safety. This question must be answered in the affirmative. The jury's finding that plaintiff failed to exercise ordinary care for his own safety can only be interpreted, according to the evidence, to mean that he deliberately undertook to cross between the cars and climb over the coupler when the cars were apt to be moved at any moment. He was aware of the presence of the locomotive at the north end of the string of empty cars. He saw it there. His explanation that he wasn't sure whether the locomotive was coupled to the cars or not does not mitigate his negligence. He adds color to his conduct by saying: "He didn't want to go around the cars because it would take too long." The cases of *Hendrickson v. Wisconsin Central R. Co.* 143 Wis. 179, 122 N. W. 758, 126 N. W. 686, and *Brennan v. Chicago, M., St. P. & P. R. Co.* 220 Wis. 316, 265 N. W. 207, are not in point. The facts are clearly distinguishable. The conceded facts in the instant

case and the jury's finding that both parties were guilty of negligence present a situation where it becomes the duty of the court to exercise its power and consider the relative negligence of the parties. In so doing, we are compelled to conclude that the negligence of the plaintiff must be considered as a matter of law to be as great as that of the defendant. *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 131, 262 N. W. 581; *Gauthier v. Carbonneau,* 226 Wis. 527, 534, 227 N. W. 135; *Grasser v. Anderson,* 224 Wis. 654, 661, 273 N. W. 63.

Respondent's counsel contends that the full-train-crew law, sec. 192.25 (4a) and sec. 192.54, Stats. 1935, is applicable. The defendant's engine was manned by a full crew of five persons, the engineer, fireman, and three switchmen. Because of the conclusion reached, we deem it unnecessary to determine whether all five members of the crew were required to be present at each switching movement. In any event, there was no causal relation between the claimed violation of the full-train-crew law and the plaintiff's injuries. Respondent further contends that the safe-place statutes, secs. 101.01, 101.06, and 101.07, are applicable. In this connection, respondent relies upon the authority of *Powers v. Cherney Construction Co.* 223 Wis. 586, 270 N. W. 41. The facts in that case are clearly distinguishable from the facts in the instant case. This case was not tried nor submitted to the jury upon the theory that the safe-place statutes were applicable; neither is there any allegation to that effect in the complaint. The question was raised upon appeal for the first time. See *London G. & A. Co. v. Great Northern R. Co.* 197 Wis. 241, 245, 221 N. W. 762. The plaintiff was an employee of the Carnegie Dock & Fuel Company and had been such employee for a period of thirty-six years. He was at all times under the control of his employer who owned and operated the coal dock and controlled and supervised the movement of cars

brought upon the dock by the defendant company. The dock foreman testified:

"Cars are only moved under my direction. These movements that took place when Mr. Sikora was injured were movements which took place under my direction."

It is clear that the safe-place statutes do not apply in the instant case. Counsel have presented other legal questions to which we have made no specific reference but all have been carefully considered. The conclusion reached necessitates a reversal of the judgment with directions to dismiss the complaint.

*By the Court.*—Judgment reversed, and record remanded with directions to enter judgment in favor of the defendant and against the plaintiff dismissing the complaint.

A motion for a rehearing was denied, with $25 costs, on February 7, 1939.