MENDEN, Respondent, vs. WISCONSIN ELECTRIC POWER COMPANY, Appellant.

*February 11—March 10, 1942.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat*.

For the respondent the cause was submitted on the brief of *Bender, Trump & McIntyre,* attorneys, and *E. L. McIntyre* of counsel, all of Milwaukee.

WICKHEM, J.   Upon this appeal defendant contends, (1) that its negligence, if any, was not a cause of the death of plaintiff's intestate; (2) that assuming it to be an efficient cause, the negligence of deceased was as a matter of law

greater than any negligence that could be fastened upon it. The nature of the contention makes it necessary to review the facts.

Defendant maintained a three-phase feeder circuit extending northwesterly and southeasterly along Hickory street, Milwaukee, on the southerly side of a building occupied in part by the Beckwith Manufacturing Company and the Ebner Shoe Company. This circuit carried three thousand eight hundred ten volts between phases and two thousand two hundred volts to ground on two poles ninety-two feet apart. The wires were thirty-one feet above the pavement and were covered with weather proofing. The two wires on the street side were eighteen inches apart. On August 18, 1936, at 11:39 a. m., there was a noise and flash and the power went off in the plant of the Beckwith Company of which plaintiff's intestate, Matthew Menden, was foreman and maintenance man. Menden rushed out to the street and found two wires on the street side broken with their ends dangling on the sidewalk emitting sparks and whipping around in a strong wind. He picked up two of the westerly ends of the broken wires, and wrapped them around a tree. He then picked up one of the broken wires on the easterly side and was in the act of wrapping that around the tree when he received an electrical shock which killed him. It had rained the night before and on the morning of August 18th and the ground was wet. There had been an especially strong gust of wind just as the wires broke.

From the evidence offered by plaintiff, it further appears that immediately prior to the handling of them by Menden the wires were sparking, flashing, and making a crackling noise; that all of the onlookers, including Menden, knew that they were live wires, and that they were the wires that conveyed the electricity in the building. Before the deceased went out to pick up the wires one of the employees, when the machines stopped, called out to phone the electric company and

call the squad car so that they could keep people away from the wires. As deceased ran to the outside he asked where the leather gloves were, and the person of whom he made inquiry said he did not know. Numerous bystanders urged the deceased to leave the wires alone. The deceased replied to one of these exhortations, "Well, I have to protect people on the street." Another witness told the deceased to leave his fingers off the wires and he would sweep them off the sidewalk with a broom. Deceased replied, "I know what I am doing." He then proceeded to pick the wires up with his bare hands, and in handling the third wire, received a shock and was killed. When deceased started to fall, and one of the witnesses started to grab him, deceased told him to go away. The testimony makes it clear that deceased, a man of forty-three years, was a fully competent maintenance man and entirely familiar with the dangers and with the proper methods of handling electric wires. In spite of warnings by at least five bystanders he deliberately, with bare hands and standing upon wet ground, picked up the broken wires, knowing them to be charged and dangerous, knowing that the electric company had been called and presumably would turn off the current or respond with a repair crew within a short time. No emergency confronted him, involving his own safety, and there were plenty of bystanders to warn pedestrians of the danger of walking on the sidewalk until help came. In the face of all this, deceased chose to put himself deliberately into a position of extreme danger, and from this his death followed.

Defendant claims that its negligence, if any, was not a cause of the accident, but under all the circumstances, a mere condition. There is authority against this position. In *Billington v. Eastern Wis. R. & L. Co.* 137 Wis. 416, 119 N. W. 127, it appears to be assumed in a situation somewhat like the present, that the acts of the defendant were an efficient contributing cause of an accident of the same general char-.

acter. This also is true in the case of *Wilger v. Wisconsin Traction, L., H. & P. Co.* 160 Wis. 654, 152 N. W. 414. Those cases, of course, belong to the period when contributory negligence was a complete defense, and both opinions were grounded upon contributory negligence. Hence, it is to be doubted whether they constitute considered authorities upon the question of causation. In the case of *Wilczynski v. Milwaukee E. R. & L. Co.* 171 Wis. 508, 513, 177 N. W. 876, an employee of one using an electric motor which was improperly installed by the defendant utility attempted after installation and attempted repair by the defendant to make further repairs to render the apparatus safe. This was done with full knowledge of the improper installation and repair and it was held that the original negligence in installing and repairing was not a proximate cause of the death of the employee by electrocution. Relying upon *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271, this court held in the *Wilczynski Case, supra,* that the act of the employee constituted an intervening cause which "renders the negligence of the defendant company so remote that it cannot be said to be a proximate cause of Karbowski's injury. The defendant company could not reasonably anticipate that workmen who had discovered the presence of a powerful dynamic electrical current which appeared to them to be so dangerous that they desisted from all work, would make a repair, especially when, as here, they knew absolutely nothing about electricity or electric apparatus." This is a considerably stronger case than the *Wilczynski Case,* for application of the doctrine announced therein. Here the deceased knew the danger, knew the proper method of handling the situation, and knew that it was not necessary to do more than warn people away from the wire until the electrical-repair crew came or until the current was cut off. If there can be such a thing as an intervening cause, this surely must constitute it. Quite a different situation would be presented had decedent, in the

dark, stumbled over the wire or walked upon it, and thus received his injuries. While in such a case he might be negligent as to lookout, or in some other respect, the negligence of the electric company would certainly not be remote. Here all that deceased had to do was to stay in a position of safety and omit deliberately to assume a known danger of substantial proportions. There was no emergency in which he was called upon to act in order to save his own or the life of others; he knew the dangers and was warned repeatedly not to touch the wires. It is suggested that he was entitled to, and evidently did, assume that the wires were covered with effective insulation, and that whatever might be true of his negligence or recklessness in picking up the first two wires, the fact that he was able to handle them safely gave him legitimate reassurance as to the other wires. We think this cannot be sound. He was dealing with broken wires which had been whipped about in high wind and the insulation upon them subjected to the buffeting of the ground and the wind. He had no right to make such assumption and the evidence that he looked for the leather gloves before he went out indicates that he made no such assumption, but rather took a chance.

In the *Billington Case, supra,* there were somewhat mitigating circumstances. There the person knew nothing about electricity, the wires had the appearance of being insulated and he acted as he did because there were young children playing, not only near the wires, but with them. The social utility of this act had a tendency to temper and mitigate the extent of his negligence, and it may be that had the comparative-negligence law been in effect there might have been a jury question as to percentages of negligence. But here it appears to us that the negligence of defendant created no peril calling for intervention by deceased. With full opportunity to appraise the nature and extent of the situation caused by defendant's negligence, with full understanding of the

danger, with knowledge of his lack of equipment and of what that equipment would consist of, and against the advice of bystanders, decedent deliberately assumed the danger. If this did not constitute an intervening cause, then certainly it constitutes a greater act of negligence than that of defendant in failing properly to maintain its circuit. It constituted all of the negligence that the deceased was capable of exercising unless, indeed, he had placed his bare hands upon the very ends of wire from which the sparks were proceeding.

It is claimed by plaintiff that this case is governed by *Christian v. New London,* 234 Wis. 123, 290 N. W. 621. In that case the infant child of plaintiff was instantly killed when he came in contact with a live wire of the defendant's street-lighting system. There was a special verdict in favor of plaintiff which was set aside and the action dismissed by the trial court. This court reversed the judgment and ordered judgment on the verdict. There was no bill of exceptions and this court was not in a position to know the facts except as they were disclosed by the findings of the jury. The sole question upon appeal was whether defendant was acting in a purely governmental capacity at the time of the accident, and this court's only determination was as to that point. The only fact before this court was that a child had come in contact with a live wire negligently maintained by the city. Obviously, it is possible for one to come in contact with live wires under circumstances rendering the company maintaining such wire liable. Obviously, it is difficult to convict a child of negligence in such a situation and still more difficult to establish that the negligence of a child is greater than that of the defendant who owned and maintained the wire. In this case, however, we have every circumstance before us practically without conflict in the testimony, and it is evident that plaintiff must fail whether the case be put upon the ground that

the negligence of plaintiff's intestate was the sole cause or merely greater than that of defendant.

This is a tragic case, and we have sought diligently to find something in the record that would support the verdict. We have been unable to find a scintilla of evidence that leads in any other direction than the foregoing conclusion.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.