NELSON, Appellant, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent.

*April 16—May 11, 1948.*

586

For the appellant there were briefs by *Hill, Beckwith & Harrington* and *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *Floyd Brynelson* and *D. V. W. Beckwith,* all of Madison.

For the respondent there was a brief by *Bender, Trump & McIntyre* of Milwaukee, and *Aberg, Bell, Blake & Conrad of Madison,* attorneys, and *Rodger S. Trump* of Milwaukee of counsel, and oral argument by *Rodger S. Trump, William J. P. Aberg,* and *Rodger M. Trump.*

FAIRCHILD, J. The parties accept the jury's findings that both appellant and McQuillan were negligent. The vital questions concern the proportion of negligence for which each is to be held responsible. The appellant contends, (1) that McQuillan's negligence was the responsible intervening cause of appellant's injuries, (2) that McQuillan's negligence was greater as a matter of law than appellant's negligence, and (3) that there was prejudicial error in the submission of subdivisions (a) and (b) under question No. 5 in the special verdict, relating to appellant's negligence.

In support of his first contention that McQuillan's negligence was the superseding or responsible intervening cause of his injuries, appellant cites Restatement, 2 Torts, p. 1189, sec. 443, and p. 1196, sec. 447. These sections must be con-

sidered in the light of the Restatement's definition of superseding cause, found on p. 1184, sec. 440:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

The present case does not fall within the scope of that definition, whether McQuillan or appellant is considered the actor. See Restatement, 1 Torts, p. 8, sec. 3.

Neither is this case controlled by certain Wisconsin cases cited by appellant in which the tests of responsible intervening forces are discussed: *Kramer v. Chicago, M., St. P. & P. R. Co.* (1937) 226 Wis. 118, 276 N. W. 113; *Menden v. Wisconsin Electric Power Co.* (1942) 240 Wis. 87, 2 N. W. (2d) 856; *Hatch v. Smail* (1946), 249 Wis. 183, 23 N. W. (2d) 460. In each of these cases it was the defendant who contended that his negligence was not the proximate cause of the plaintiff's injury because the plaintiff's conduct amounted to an intervening cause. In each of those cases a superseding cause was sought to be shown in order to defeat the plaintiff's right to recovery. In the instant case, the rules applicable to superseding causes are sought to be used to enable a plaintiff to escape the consequences of his having been contributorily negligent. In *Wilczynski v. Milwaukee E. R. & L. Co.* (1920) 171 Wis. 508, 177 N. W. 876; *Fox v. Koehnig* (1926), 190 Wis. 528, 209 N. W. 708; and *Swinkels v. Wisconsin Michigan Power Co.* (1936) 221 Wis. 280, 267 N. W. 1, cases also cited by appellant, certain negligence on the part of the defendants was held not to have been the proximate cause of plaintiffs' injuries. If the appellant's negligence in this case were like the defendants' negligence in those cases and were not a proximate cause of his injury, his negligence, of course, would not bar or reduce his recovery. However, the jury, under proper instructions as to proximate cause,

found that his negligence was a proximate cause of his injury, and that finding is supported by the evidence. Accordingly, the question of comparing the negligence of the appellant with that of McQuillan became a question for the jury, and the doctrine of superseding cause does not apply.

As to appellant's second contention that McQuillan's negligence was as a matter of law a more substantial cause of appellant's injuries than appellant's own negligence, our conclusion is that upon the record the evidence sustains the jury's finding of a fifty-fifty distribution of negligence. The jury were warranted in this finding against the appellant. The jury were of the opinion that appellant's part was conducted negligently. There was evidence to show the futility of attempting to control the bull in the manner appellant employed. Apart from that was the evidence relating to how he held the rope. When Hottman threw the rope over the fence to appellant, he warned him to be careful, not to get wound up or caught in the rope. Appellant had had experience in loading cattle, and he claimed that wrapping the rope around his right hand would not have been dangerous if McQuillan's taking hold of the rope had not made it impossible to extricate his hand. The jury, however, were convinced that appellant invited risks by holding onto the rope in the manner he did. The whole incident happened quickly. It was just a matter of seconds between the time the bull rushed westward in the alley and the time appellant was drawn against the fence where his fingers were torn and crushed. Thus there existed substantial factors, independent of McQuillan's negligence, which were likely to cause the injury sustained by appellant and which the jury believed did cause the injury.

McQuillan had no duty or obligation arising out of any relation to appellant before he gratuitously attempted to assist him. Having engaged in what might be an effort to help one in difficulty, it became his duty "to exercise with reasonable care such competence and skill" as he possessed. Restatement,

2 Torts, p. 873, sec. 323. Some of the circumstances here shown to exist would tend to support a conclusion that a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would act as McQuillan did. He was not aware of how appellant had wound the rope around his hand. He saw the bull charging toward Hottman, and he saw appellant being dragged in his effort to retard the bull. This effort, futile and negligent as it was on appellant's part, prompted McQuillan to attempt to assist. Evidently, as McQuillan saw the situation, there were indications of danger which caused him to respond impulsively. He did not warn appellant that he was seizing the rope, but the space of time between his doing so and appellant's injury appears to have been too slight even for ordinary measuring.

The jury, however, were not convinced that McQuillan's response was free from all negligence. A consideration of Hottman's testimony shows that he did not consider himself in danger. A basis for the finding of negligence against McQuillan rests in the opinion that the ordinarily prudent man would have formed a different opinion on what was happening from the opinion formed by McQuillan. The jury were evidently convinced that if McQuillan had acted with greater caution, it would have appeared to him that the danger did not exist and that his help was unnecessary. Under the circumstances we are of the opinion that McQuillan's negligence could not be greater than what was assessed him by the jury. McQuillan's concurring act, even if negligent, was not a cause which made a greater contribution to the injury than the negligence of appellant.

The third contention is made that the two parts of question No. 5 of the special verdict involve such duplication as to render it likely that the jury was misled and that the question of comparative negligence was on that account inaccurately answered. Subdivision (a) required the jury to find whether appellant was negligent "with respect to the manner and pro-

cedure used in handling the bull, under all the circumstances which then and there prevailed?" Subdivision (b) required the jury to find whether appellant was negligent "with respect to the manner in which he held and managed the rope, under all of the circumstances then and there prevailing?" The instructions upon these questions are not as illuminating as could be desired. The situation would have been improved by a more adequate instruction on subdivision (a), but we are not persuaded that any result prejudicial to appellant resulted from this omission or the ruling of the trial court. "The first object in the construction of a verdict is to learn the intent of the jury, and when this can be ascertained, such effect should be given to the verdict, consistent with legal principles and construing it as a whole, as will most nearly conform to the intent." 53 Am. Jur., Trial, p. 716, sec. 1036. Subdivision (a) inquires concerning the manner and procedure used in handling the animal. This taken in its commonly understood sense means the general plan and method of dealing with the situation. There was evidence that the bull was handled by a rope without a nose ring. The plan was to use the friction of the fence to snub the rope and increase the resistance which a man holding the rope could exert. The issue as to the providence of that manner of proceeding stood out clearly in the evidence, and we think the jury could not have misunderstood the scope of the question.

In instructing upon subdivision (b) the trial court specifically told the jury that they were to find whether appellant was negligent with respect to the manner in which he wound the rope around his hand. In view of that specific instruction, we are of the opinion that the jury could not have supposed that this point was also to be considered in subdivision (a). Subdivision (a) asks for the prudence of a general procedure, which was in question under the evidence during the whole trial. Subdivision (b) asks specifically whether appellant was negligent in winding the rope around his hand. Since

these were the two issues in the case affecting appellant's conduct and since the jury answered both of them adversely to the appellant, it is considered that the jury was not misled nor did it consider duplicate acts of negligence in coming to a finding of comparative negligence.

The situation is not like that in a personal-injury case where a party has completely failed to maintain a lookout and for that reason has not reduced his speed or stopped and so managed his car as to avoid a collision. In such a case unless there is a correct submission, the jury may, in connection with the comparative negligence question, fall into the error of considering what is virtually one item of negligence as several. (See discussion by Mr. Justice WICKHEM in reviewing several cases in the opinion in *Reynolds v. Madison Bus Co.* (1947) 250 Wis. 294, 26 N. W. (2d) 653.) In this case there was no such danger, and we are satisfied that there was no such improper result.

Had respondent any interest to object, there would be some doubt as to the propriety of submitting question No. 3 as to emergency. We pass this matter with a remark that certainly this is not the type of emergency commonly dealt with in personal-injury cases. This is the case where a party intervened in a situation to prevent harm to another person and where the question is whether his act was in accordance with the necessities of the situation. It is more than likely that McQuillan's conduct could have been considered in an ordinary question of negligence and that whatever element of emergency intervention was present should have been taken care of by a proper instruction.

Since we hold that there was no prejudicial error in the submission of the case, since it is conceded that there was a jury question and since the evidence supports the verdict, it follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.