DINGER, Respondent, vs. McCoy TRANSPORTATION COMPANY and another, Appellants.*

*March 8—April 12, 1949.*

* Motion for rehearing denied, with $25 costs, on June 7, 1949.

448

For the appellants there were briefs by *Lees & Bunge,* and oral argument by *Lawrence M. Engelhard,* all of La Crosse.

For the respondent there was a brief by *Donovan, Gleiss & Goodman* of Sparta, and oral argument by *Leo J. Goodman.*

ROSENBERRY, C. J.    We shall deal only with the question of apportionment of negligence.    The matter can be more accurately presented in connection with plaintiff's Exhibit 1, reproduced herewith.    The letter X is the point where the driver of the bus testified he entered the intersection traveling at a speed of twenty-five miles per hour.    The letter T is the point where he testified the collision took place, and he further testified that the bus traveled about twenty-eight feet beyond point T after the collision.    Point Y is where the plaintiff testified he started to make his left turn.    The letter K represents the point where the plaintiff testified his car was struck.

Hugh Bacon, a disinterested witness, testified that he came down Water street from the north, and saw an eastbound car coming so he waited at the stop sign.    The car was on the right side of the highway, the south side, probably a little better than one hundred feet away to the west on Wisconsin street.    He saw the bus coming some distance to the east at a point not designated on the map.    He judged the speed of the car to be fifteen to twenty miles and the speed of the bus to be thirty-five miles an hour.    He also testified that the collision took place almost in front of him.    As shown on the map the

450

Plaintiff's Exhibit 1.

distance from the center of the intersection to the northwest curb is thirty-eight feet.

Dinger testified that he put out his left hand and when he was two to five rods back from Water street, that is, west of the west line of Water street, that he put his hand out right after he saw the bus, that when he got four feet into Water street he saw the bus coming and stepped on the gas to try to

get out of the way. He further testified, "I mean that just as my car started to come into Water street I started to turn left. I got into Water street on the north side of the center line."

Plaintiff also testified that with reference to Water street he started to turn when he probably was four feet from the northwest corner. According to his testimony he did not come nearer to the center of the intersection than twenty-two or twenty-three feet. He also testified that the bus was running fifty to sixty miles an hour but that he was only thirty feet away when he noticed its speed. When asked why he continued to make his left turn in the face of the fast-moving bus he said, "I was on the north side." Plaintiff testified that he did not know where the bus was when he started to make the turn and did not notice how fast it was going when he first saw it.

It further appeared from the evidence that when the bus struck the plaintiff's car it pushed it thirty to thirty-five feet to the north side of the highway against the curb. The witness Bacon also testified that the bus was about three hundred feet away when he saw Dinger with his hand out, and further testified that Dinger began to make his turn a rod west of the intersection when the bus was about one hundred feet east of the intersection; that he observed as the bus approached the car that the right front wheel of the bus was skidding, that it was skidding when it entered the intersection.

The accompanying illustration of a legal left turn is taken from the Official Drivers' Manual issued by the motor vehicle department, and indicates the path which the plaintiff should have followed if he had turned into Water street in accordance with the provisions of sec. 85.17 (2), Stats. 1943.

It is to be noted from the facts stated that the plaintiff failed to obey this statute in any particular. He did not remain on the south side of Wisconsin street until, in turning, the center of the intersection was immediately to his right. He never

reached or attempted to reach the east lane of Water street; he did not continue in the south lane of Wisconsin street until he was in a position to turn from the lane he was in immediately to.the right of the center of the roadway and proceed as closely as possible to the left of the center of the intersection, and he did not leave the intersection immediately to the right of the center of the intersecting highway. He violated sec. 85.18 (5), Stats. 1943, by not giving the vehicle coming from the opposite direction a reasonable opportunity to avoid a collision.

In its decision on motions after verdict the trial court said:

"The plaintiff testified that he gave a plain signal of his intention to make a left turn. The witness Bacon, who had a

commanding position to see what was done or not done, saw the signal so given. The driver of the defendant's bus says he did not see it. Why did the driver of the bus not see it? . . . Had the bus driver seen the signal given by Dinger, the plaintiff, (lookout) as indicating his intention of turning, or had the bus been going a little more slowly (speed), or had the driver of the bus swerved a little to his left (management and control), either one of these three things, there probably would have been no accident."

Assuming that the bus driver had seen the signal he would have had a right to rely upon Dinger's observance of the law. When Dinger put out his left arm that was not a signal that he was going to turn before he got into the intersection or immediately after and try to cut in ahead of the bus. It was a signal that he intended to make a turn in accordance with the law of the road. As the trial court says, if he had done so no accident would have happened. Under the circumstances of this case if the bus driver had seen the signal, which was made according to Dinger's testimony from two to five rods west of the west line of Water street and according to Bacon when Dinger was one hundred feet west of Water Street, the bus driver would have had no reason to believe that Dinger intended to violate the law. Dinger certainly violated the provisions of the two sections already quoted in every way possible.

It is perfectly evident from the whole record that what the plaintiff was doing was consciously departing from his correct route for the purpose of cutting in ahead of the bus instead of waiting for and making a proper turn. Plaintiff must have concluded that he could not make a legal turn.

The negligence of the bus driver, if any, was in his failure to see Dinger's hand out, which would have been an indication to the bus driver that Dinger would wait for him to pass. If the bus driver was driving at an unlawful speed that had but little, if any, causal connection with the accident. We find no evidence that sustains the finding that the bus driver was

guilty of lack of control and management. The undisputed testimony is that the front wheels of the bus were skidding as the bus entered the intersection. The finding of the jury to that effect is inconsistent with its finding that the bus driver was not negligent in failing to yield the right of way.

There can be no question but that under the circumstances of this case the negligence of the plaintiff was greater than that of the bus driver. *Lurie v. Nickel* (1940), 233 Wis. 420, 289 N. W. 686; *Hansen v. Storandt* (1939), 231 Wis. 63, 285 N. W. 370; *Barkdoll v. Wink* (1941), 238 Wis. 520, 300 N. W. 233; *Lardeau v. Johnson* (1931), 203 Wis. 509, 234 N. W. 710; *J. W. Cartage Co. v. Laufenberg* (1947), 251 Wis. 301, 28 N. W. (2d) 925; *Grasser v. Anderson* (1937), 224 Wis. 654, 273 N. W. 63.

For the reasons stated the judgment must be reversed.

*By the Court.*—Judgment reversed with directions to dismiss the plaintiff's complaint.

HUGHES, J. (*dissenting*). When this case was here before we held that the plaintiff was guilty of negligence as a matter of law in the manner in which he made his left turn by failing to pass immediately to the left of the center of the intersection. I am of the opinion that the question of whether this negligence was causal was for the jury. Upon the second trial the court answered the question with respect to negligence and with respect to causation.

In addition, the court submitted subdivision (f) of question 3 inquiring whether the plaintiff was negligent with respect to cutting the corner and failing to afford the driver of the defendant's bus a reasonable opportunity to avoid a collision upon his attempt to turn to the left across the path of said approaching bus. This question the court likewise answered "Yes," as well as a question holding that the negligence found by the court in subdivision (f) was causal. If that were true upon the undisputed evidence, then of course it would lead to a dismissal of the plaintiff's complaint. How-

ever, the court submitted the question of whether the driver of the defendant's bus was negligent with respect to lookout. The jury answered this question "Yes," and upon motions after verdict when requested to change this answer, the court said:

"The plaintiff testified that he gave a plain signal of his intention to make a left turn. The witness Bacon, who had a commanding position to see what was done or not done, saw the signal so given. The driver of the defendant's bus says he did not see it. Why did the driver of the bus not see it? In addition, the evidence showed that the plaintiff did not sharply turn to the left of the center, as was the situation in several cases cited by the defendant, but made a long sweeping turn, starting some fifty feet west of the western curb line of the intersection. Why did the bus driver not notice this? It seems to the court that the question of lookout by the driver was clearly one for the jury and that there is ample evidence to sustain the findings of the jury relative thereto."

In view of the testimony which the court refers to in the decision above quoted, it would appear that the question of whether the plaintiff Dinger gave a signal of his intention to turn across the path of the bus at such time as to afford the bus driver an opportunity to avoid colliding with the Dinger automobile was a question for the jury, and that the entire matter of causation and comparison of negligence is one which should be submitted to the jury upon a proper verdict under adequate instructions. I am therefore of the opinion that the case should be reversed and remanded for a new trial.

I am authorized to say that Mr. Justice WICKHEM concurs in this dissent.

BROADFOOT, J. (*dissenting*). I am unable to agree with the majority of the court in this case. When the case was first before this court, a new trial was ordered so that the negligence of the parties could be compared by a jury. The trial court submitted the question under proper instructions pur-

suant to the mandate of this court. The negligence of the parties was of a different kind. There was credible evidence to sustain the jury's verdict. I do not think its findings should be disturbed.