QUADY, Plaintiff and Respondent, vs. SICKL, Defendant:
BELDEN and another, Defendants and Respondents:
PANKRATZ and others, Defendants and Appellants.*

*December 4, 1951—January 8, 1952.*

---

\* Motion for rehearing denied, with $25 costs, on March 4, 1952.
Mandate amended.

350

For the appellants there were briefs by *Genrich & Terwilliger,* attorneys, and *Emil A. Wakeen, Walter H. Piehler,* and *Neil M. Conway* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger.*

For the respondent David E. Quady there was a brief by *Spohn, Ross, Stevens & Lamb,* attorneys, and *Frank A. Ross* and *James F. Spohn* of counsel, all of Madison, and oral argument by *James F. Spohn* and *Frank A. Ross.*

For the respondents William Ellsworth Belden and Continental Casualty Company there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith.*

GEHL, J.   A number of errors are assigned. In our view of the case only one need be considered—the contention that the negligence of the plaintiff must be held as a matter of law to be as great or greater than that of Pankratz. We have held that it is in rare cases where we will disturb a jury's comparison of negligence, and that the instances in which it can be said as a matter of law that the negligence of the plaintiff is equal to, or greater than, that of the defendant will ordinarily be limited to cases where the negligence of each is of precisely the same kind and character. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97. We have also said that,—

"Where, however, it appears that the negligence of the plaintiff is as a matter of law greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold." *Peters v. Chicago, M., St. P. & P. R. Co.* 230 Wis. 299, 301, 283 N. W. 803.

We have also considered the relative negligence of the parties where the respective failures were not of the same kind and character. *Zenner v. Chicago, St. P., M. & O. R. Co.*

219 Wis. 124, 262 N. W. 581; *Sikora v. Great Northern R. Co.* 230 Wis. 283, 282 N. W. 588; *Patterson v. Chicago, St. P., M. & O. R. Co.* 236 Wis. 205, 294 N. W. 63; *Nayes v. Milwaukee E. R. & L. Co.* 237 Wis. 141, 294 N. W. 812; *DuBois v. Johnson,* 238 Wis. 161, 298 N. W. 590; *Menden v. Wisconsin Electric Power Co.* 240 Wis. 87, 2 N. W. (2d) 856; *Dinger v. McCoy Transportation Co.* 254 Wis. 447, 37 N. W. (2d) 26; *Gvora v. Carlson,* 255 Wis. 118, 37 N. W. (2d) 848.

No more can be read out of the precedents than that each case must be considered upon its peculiar facts.

We conclude that from his own testimony it appears that the negligence of plaintiff was, as a matter of law, as great as or greater than that of Pankratz. As he approached the scene he was driving at the rate of about fifty miles per hour; when he was about four blocks away he saw some bright headlights coming toward him; they blinded him; he passed out of the blind area when he first observed the Sickl truck forty or fifty feet ahead of him; he did not decrease his speed before he observed the Sickl truck and went on to say that even after applying his brakes at that point he did not slow down "up to the time directly before the impact." He was asked:

"*Q.* Now, in other words, Mr. Quady, I want you to get this straight: From the time that you were four blocks north of those lights, and they were coming toward you, and as you approached and they became closer to you until you got to a point where they were sixty feet away from you, you were blinded continually by those lights? *A.* Right.

"*Q.* And as you approached the lights and they approached you, the blindness became more intense in severity, in other words, it became more severe and caused your vision to be more obscured? *A.* Right.

"*Q.* During that time you did not in any way lower your rate of speed, is that correct? *A.* Right.

"*Q.* You did not bring your car to a stop, is that correct? *A.* Right.

"*Q.* You did not apply your brakes? *A.* When?

"*Q.* During that time until the blindness ceased. *A.* Right."

"When the situation on a highway is such that one's vision is completely obscured, it is one's duty to slow down or even stop until the cause of such obscured vision is at least in part removed. [Citing cases.] Whether one's vision is completely obscured by blinding lights, dust, or dense smoke seems quite immaterial." *Mann v. Reliable Transit Co.* 217 Wis. 465, 468, 259 N. W. 415, quoted with approval in *Guderyon v. Wisconsin Telephone Co.* 240 Wis. 215, 2 N. W. (2d) 242.

The facts in this case with respect to the conduct of Quady are quite similar to those present in *Pietsch v. McCarthy,* 159 Wis. 251, 150 N. W. 482, where the plaintiff, proceeding at the rate of from ten to thirteen miles per hour, his vision so dazzled by headlights coming in the opposite direction that he could not see defendant's unlighted wagon ahead of him, proceeded in that situation a distance of one hundred feet without reducing his speed until he bumped into defendant's wagon, which he did not see until he struck it. We held there that plaintiff was guilty of negligence as a matter of law. See also *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629.

Upon the question whether Pankratz dimmed his headlights as he approached the scene he testified at various times that when he was from sixty to three hundred feet from the Sickl truck he first observed it and applied his brakes and at about the same time dimmed his headlights. Whether he negligently failed to dim his headlights so as to prevent blinding the drivers of approaching vehicles and

thereby violated the then effective statute, sec. 85.06 (2) (h), Stats. 1947, which provides:

"Every person operating or driving a motor vehicle on the public highways shall, when approaching, and about to pass, any other person operating or driving a motor vehicle and traveling in the opposite direction, dim, depress, or tilt the front headlights on his motor vehicle so that the rays projected therefrom will not blind the person whom such driver is approaching and about to pass. . . ."

was for the jury. Upon ample testimony the jury found that he did so fail.

Thus, we have the question whether one who, when approaching an oncoming car, fails to dim his headlights and thereby blinds the approaching driver can be held to be guilty of a greater degree of negligence than the other who, when as much as four blocks away when he first becomes blinded, proceeds on so blinded without reducing his speed or taking any other steps for his own safety until he reaches a point at which disaster cannot be averted. We think not.

We consider that the accident was attributable to the negligence of Quady to at least the same extent as it was to that of Pankratz. It is difficult for us to conceive any greater negligence than for an automobile driver to continue to proceed at the rate of fifty miles per hour without any effort to slow down or take other precaution for a distance of nearly four blocks when so blinded as to render it impossible for him to see an object ahead of him on the highway until too late to avoid striking it. A complete failure on the part of Quady to give attention to the probable consequences of his conduct appears here. It amounts to as great a degree of negligence as can be charged to any of the acts of defendant Pankratz.

The jury found that plaintiff's negligence contributed 15.42 per cent and that of defendant Belden, 14.17 per cent. This finding prevents recovery by Quady from Belden.

Defendant Sickl was found to have contributed 47.08 per cent to the accident. Notice of appeal was served upon him. He made no motion for a review—in fact, he made no presentation upon this appeal. As to him, the judgment must be affirmed.

*By the Court.*—That part of the judgment awarding recovery by the plaintiff against the defendant, Joseph Sickl, is affirmed. That part of the judgment awarding recovery by the plaintiff against the defendants, Raymond John Pankratz, Hub City Jobbing Company, and Employers Mutual Liability Company of Wisconsin, is reversed with directions that as to said defendants the complaint be dismissed.

The following memorandum was filed March 4, 1952:

PER CURIAM. (*on motion for rehearing*). (1) David E. Quady's motions, individually and as surviving husband of Mollie E. Quady, for a rehearing, are denied with costs. (2) Appellants' motions for amendment of the mandates are granted without costs, and the mandates are amended so as to include the following: That part of the judgment adjudging that Joseph Sickl shall have judgment for contribution against the defendants, Raymond John Pankratz, Hub City Jobbing Company, and Employers Mutual Liability Company of Wisconsin, for one half of all sums that he shall pay to the plaintiff in excess of one half of the plaintiff's judgment herein, with interest, is reversed, with directions that as to said defendants, the cross complaint for contribution by Joseph Sickl be dismissed. (3) That part of the judgment taxing costs in favor of William Ellsworth Belden and the Continental Casualty Company against Raymond

John Pankratz, Hub City Jobbing Company, and Employers Mutual Liability Company of Wisconsin is reversed, with directions that said portion of the judgment be vacated; and that the respondents Belden and Continental Casualty Company are to have costs on this appeal against Raymond John Pankratz, Hub City Jobbing Company, and Employers Mutual Liability Company.